ISAAC COLBY *vs.* ELISHA REYNOLDS.

WASHINGTON,
*March,*
1834.

Words published are libellous, when they would not subject the person to an action, if only spoken.

It is a libel to publish of a man that he had made and put in circulation a false, scandalous and scurrilous report about another.

This was an action brought in the court below for a libellous publication in the newspapers. After verdict of guilty against the defendant, he made a motion in arrest of judgment, on the ground of insufficiency of the declaration. This motion was overruled by the court. To which decision the defendant made his exception, upon which the cause come here for revision.

The publication declared on was as follows :

"Notice. Whereas a report has been some time in circulation, that the undersigned [meaning himself, the said Elisha Reynolds] has abused his family in a scandalous manner, by placing a daughter of his upon a rail, in a manner *a la cavalier*, [meaning in the manner of a cavalier] whose age was that of womanhood—This is to give notice, that the report is false, and done no doubt for the purpose of injuring the character of the undersigned [meaning himself, the said Elisha Reynolds] in the estimation of the public, and subject him [meaning himself, the said Elisha Reynolds] to the censure of that portion of the religious community with whom he [meaning himself, the said Elisha Reynolds] has for a long time stood connected. The individuals who put the report in circulation are Thomas V. Ward and Isaac Colby, [meaning one Thomas C. Ward and the said Isaac Colby, plaintiff, and that the said Isaac Colby the plaintiff and the said Thomas V. Ward are mischievous, lying persons, and that they maliciously put said false report in circulation to injure the reputation of the defendant.] If proof of the whole affair be called for, the undersigned [meaning himself, the said Elisha Reynolds] will be happy at any time to exhibit it. ELISHA REYNOLDS.

Berlin, July 16, 1831."

The defendant plead the general issue, accompanied with notice, which was in substance that he should give the truth in evidence in his defence.

*O. H. Smith and Merrill for the defendant.*—The defendant contends that the publication is not libellous.

The law recognizes and guarantees to every person, as a part of the right of personal security, the preservation of his name from detraction. If a charge is made, or a report is in circulation, injurious to the character of any person, the law

Washington,
March,
1834.

Colby
vs.
Reynolds.

allows him to deny the charge and vindicate himself, for the purpose of preserving his good name; and he cannot, therefore, be held responsible for such denial as a libeller, in case he cannot procure testimony to disprove the original charge or report. It also furnishes an additional remedy in certain cases, by an action on the case for damages. In order to maintain an action for a libel, the plaintiff must bring his case within the true definition thereof, to wit—*a censorious or ridiculing writing, picture, or sign, made with a malicious and mischievous intent towards government, magistrates, or individuals. A malicious intent, and an offensive tendency, must concur to constitute a libel.* Therefore if the object and intent of the publication set forth in the plaintiff's declaration appears to be plainly a vindication of the defendant's character and that of his family, and the preservation of his and their rights, the publication is not in law a libel.—9 John. Rep. 214—2 Kent's Com. 13—1 Swift's Dig. 490.

The publication alludes to a report, which had been sometime in circulation, and says that the "*report*" so in circulation "*is false,*" and "*done,*" that is circulated, for the purpose of injuring him, &c.. It also alludes to an "*affair,*" which had at sometime happened, and to which the report had reference, and says that Ward and Colby put the report in circulation, but does not impute any thing intentionally wrong to Ward and Colby in so doing. The plaintiff, however, claims that the charge of keeping the report in circulation for a long period of time, for the purpose of injuring him, is the same as charging him with *putting* it in circulation for that purpose, or in other words, that he is charged with putting it in circulation for that purpose. This we deny. To infer that, would be to pre-suppose that the motives of a person who by any means puts a report in circulation must of necessity be the same as the motives of those who give subsequent currency to it, and therefore the motives charged to one are in effect charged to both, or that the person who puts a report in circulation is chargeable for the motives, additions and alterations of those who may afterwards give currency to it. We contend that this publication does not in the least *impugn the motives* of Ward and Colby; that it does not, directly or indirectly, charge them with putting the report in circulation with a view to injure him.

But suppose the publication is to be construed as charging the plaintiff with putting the report in circulation for the pur-

WASHINGTON, March, 1834.

Colby vs. Reynolds.

pose of injuring the defendant in the estimation of the religious community, &c.; does it alter the case? Is it charging him with doing it maliciously? By no means. May not a person honestly put in circulation a report, believing that it is true and that it is his duty to make it known, which ought to injure the present character of another in the estimation, &c., and which, if true, he has a right to put in circulation as a caution to those with whom he was connected?—Holt, 189.

Where there is no imputation on the moral character of the plaintiff, no words of ridicule or contempt, nothing which can affect his reception in life, or exclude him from general society, it is no libel.—Holt, 228.

Publishing a positive contradiction of what a witness swore to at the trial of a cause between the defendant and another person, was held not to be libellous, as no crime was imputed.—John. Rep. 214.—Holt, 240.

The following passage published of the plaintiff, who was envoy from Chili, was decided not to be a libel, as imputing fraud on the English nation: "The plaintiff lost no time in transferring himself, together with £200,000 sterling of John Bull's money to Paris, where he now out-tops princes in his style of living."—13 Com. L., 36.—Bing. 432.

In the case of *Stockley* vs. *Clement*, 13 Com. L. 390—4 Bing. 162, an advertisement cautioning the public in relation to a forged bill, "*purporting to be drawn by one John Stockley*," and stating that the bill was forged, was adjudged not to be libellous.

In an action for a libel for publishing a handbill offering a reward for the recovery of certain bills of exchange, and stating that A. B. is suspected of having embezzled them, it is a good defence on the general issue, that the handbill was published solely with a view to the protection of persons liable on the bills, or the conviction of the offender.—22 Com. L. 356.

In the above cases the language used is much stronger than that used in the case under consideration. And if they were deemed not libellous because the motive was lawful, how much more reason there is for saying the publication is not libellous in the present case, where the motive was solely self-defence. No crime is imputed to the plaintiff, nor even *malice*.

No part of the publication shows that the defendant was actuated by *malice*, or that he was actuated by any motive other than self-defence.

Colby
vs.
Reynolds.

Though that which is written may be injurious to the character of another, yet if done *bona fide* and with a view of investigating a fact in which the party is interested, it is not libellous; as where an advertisement was published by the defendant at the instigation of the wife of the plaintiff for the purpose of ascertaining whether the plaintiff had another wife living at the time he married her, it was holden, though the publication might impute bigamy to the plaintiff, yet having been published under such authority and with such a view, it was not libellous.—4 Esp. 191.—1 Swift. Dig. 489.—Holt, 191.

An action does not lie for publishing these words of L. S.— "He has delivered false evidence and untruths in his answer to a bill in chancery."—Holt, 189.

In order to constitute a libel, the mind must be in fault, and show a malicious intention to defame.—Holt, 202, per Lord Kenyon.—Holt 228.—13 Com. L. R. 128.—4 Taunt. 355.

*Upham & Keith contra.*—That the publication complained of is a libel, we believe to be fully established by the following authorities:

Mr. Holt, in his Law of Libel, (223) says, that "Every thing written of another, which holds him up to scorn and ridicule, that might reasonably be considered as provoking him to a breach of peace, is a libel."—See also 1 Swift. Dig. 488.

And in the same manner, all such written abuse as may be fairly intended to impair him in the enjoyment of society, or to throw a contempt on him which might affect his general fortune and comfort, is a positive injury, and therefore the subject of an action on the case.—Holt's Law of Libel, 223.

The counsel here cited 3 Salk. 226, *Thorby* vs. *Ld. Kerry.*—4 Taunt. 355, *Hillhouse* vs. *Dunning* —6 Conn. Rep. 391, 408.—Holt's Law of Libel, 229, note.—2 Wils. 403.— Starkie on Slander, 134. 136–7.—Comy. Dig. A. 3.—1 Bos. & Pul. 331.—4 Mass. R. 163–4.—2 Pick. 113–15—1 Swift Dig. 489.—7 Cowen, 613.—7 John. 264–5—9 do. 214.—3 John Ca. 354.—19 Com. L. R. 117.—3 Camp. R. 214, note.—17 Com. L. R. 292.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—This is an action for a libel. It is stated that the defendant published in one of the papers printed in this town, a communication which the plaintiff contends is

libellous.   The jury have returned a verdict for the plaintiff: Washington, March, 1834. they must have found that the publication was made by the defendant—that the innuendoes were true—that it was made Colby vs. Reynolds. with an intent to injure the plaintiff, or in other words, that it was malicious, and that it was false.   This also may have involved the truth or falsity of the report in relation to the defendant, which was the subject of the publication.   Inasmuch as the defendant in the publication, stated that a *false* report about him was in circulation, and put in circulation by the plaintiff, it was competent for him on the trial, to show that the report was false, as well as that the defendant was the author; and in that case, his justification would be complete.—On the other hand, the plaintiff might prove that the report in circulation was true, or that he was not the author.

The defendant, after a verdict against him, has moved in arrest for the insufficiency of the declaration; and the question, and the only question, which has now been made is, whether the publication is libellous.   It is to be observed, that the declaration charges the defendant with having published a libel or written slander.   A distinction has long been known and recognized between verbal and written slander.   Words, when committed to writing and published, are considered as libellous, which if only spoken, would not subject the person speaking to any action. Perhaps it is to be regretted that a distinction was ever made between oral and written slander; and if it was a new question, no distinction would now be made.   The reasons which have been given for the distinction, have been questioned both by writers and judges of eminence.   It has been made however, and has become a part of the law, and as such we must receive it.   There can be no question, but that a slander written and published, evinces a more deliberate intention to injure, is calculated more extensively to circulate the accusation, and to provoke the person accused, to take the means of redress into his own hands, and thus to commit a breach of the peace, than mere oral slander which is spoken and soon forgotten.   The report in circulation in relation to the defendant, while it was a mere report, was confined to the neighborhood, and could not have been very extensively known.   Whereas, had it been published, as was the slander of which the plaintiff complains, it would have been known to every reader of the paper, and have circulated as extensively as the paper circulated, and have excited the curiosity of many who never had heard of the parties before.

Words spoken must impute some crime so as to endanger the person to whom they relate, or they must impute to him something which would tend to exclude him from society, and lead one to avoid him. But a publication which renders the person ridiculous merely, and exposes him to contempt, which tends to render his situation in society uncomfortable and irksome, which reflects a moral turpitude on the party and holds him up as a dishonest and mischievous member of society, and describes him in a scurrilous and ignominious point of view— which tends to impair his standing in society, as a man of rectitude and principle, or unfit for the society and intercourse of honorable and honest men, is considered as a libel. The rule has been laid down by an eminent writer, and one who has endeavored to draw his principles from decided cases—" That any writings, pictures, or signs, which derogate from the character of an individual, by imputing to him either bad actions or vicious principles, or which diminish his respectability and abridge his comforts by exposing him to disgrace or ridicule, are actionable without proof of special damage. In short, that an action lies for any false, malicious, and personal imputation, effected by such means, and tending to alter the situation of the party in society for the worse."—Starkie on Slander, 140. This rule is probably not more extensive than a due regard to justice requires.

It remains to be considered, whether the publication here complained of comes within the definition ; and without making any comparison between this and the numerous cases which have been decided, we can learn its true nature and tendency from the publication itself; and we can, by reading it, discern whether or no the tendency of it was to impute to the plaintiff either a want of moral rectitude, or to accuse him of a bad action and vicious principle, to hold him up as a dishonest, dishonorable and mischievous member of society, and one who ought to be avoided by honest and honorable men. The publication in the first place charges that a report was in circulation highly injurious to the character and standing of the defendant as a member of society, and particularly as a member of the religious community with whom he was connected, and which, if not true, was a gross, scurrilous and indecent slander on the defendant. Second, that the report was false, and not only false, but done with a view to injure the defendant, implying

WASHINGTON,
March,
1834.

Colby
vs.
Reynolds.

that the report was fabricated and put in circulation with a malignant design. The defendant, no doubt, intended that it should be so understood. No one could possibly have supposed by this, that the writer intended that the false report was fabricated by some one, and another had put it in circulation innocently; but it was undoubtedly intended to express or cause it to be believed that the author of the false report had given it circulation with an intent to injure; and that there might be no mistake as to the individual who thus put this false report in circulation, the plaintiff is directly charged with having put this false report in circulation, and by inference as the author and fabricator of the false and scurrilous charge.

If the defendant had contented himself with stating the report and then denying it, and by imputing improper motives to the person who put the report in circulation, without charging the plaintiff as the author, he would have been justified and would have come within the principle laid down by the court in *Steele* against *Southwick*, in their remarks upon the second count in the declaration.—9 Johnson, 214. But when he published that a false report was put in circulation, and put in circulation with a design to injure him, and that the plaintiff put the report in circulation, what other conclusion can we draw, than that he meant to charge the plaintiff with having with a mischievous intent, and with the malice of the common slanderer, published and put in circulation a false and slanderous report of and concerning defendant? And can any one say that the tendency of this charge was not to impute most vile and dishonorable conduct to the plaintiff—to impute to him both a bad action and vicious principle—to impute to him a want of moral principle and cause him to be shunned by every honest and honorable man, as a common calumniator? Surely, no one would be disposed to associate with a man who could thus calumniate his neighbors and put in circulation a report so scurrilous and so defamatory. The necessary tendency of such an accusation, was to injure the situation and station of plaintiff in society; and according to the principles laid down in the adjudged cases, it must be considered as a libel, and even the ingenuity which in former times was exercised, to give to words the mildest interpretation, could not by any forced and unnatural construction of the publication, treat this publication

as wholly innocent, and not imputing any thing to the plaintiff injurious or scandalous.

The judgment of the county court must therefore be af-firmed.