## Danville Democrat Pub. Co. v. John C. McClure.

1. LIBEL—*Charge of "Shameless Skullduggery" Actionable.*—A newspaper publication charging the president of an institution of learning with "shameless skullduggery" is libelous, and actionable as such.

2. JUROR—*Misconduct—What is Not.*—Pending the trial of a case in court, a juror, during the noon hour, in the presence of the attorneys for both sides, the presiding judge and the other officers of the court, had a short conversation with the plaintiff with reference to sending his son to the institution in his charge, and handed to him an envelope contain-

ing his son's address, to which he requested that a catalogue be sent; but the court was unable to discover anything in the conduct of the juror to justify the conclusion that the verdict was influenced in any way by what was said or done.

**Action in Case,** for libel. Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the May term, 1899. Affirmed. Opinion filed December 13, 1899.

LAWRENCE & LAWRENCE and TILTON & CUNDIFF, attorneys for appellant.

JONES & PARTLOW and J. W. KEESLAR, attorneys for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

This is an action on the case by appellee against appellant for publishing an alleged libelous article in the Danville Daily Democrat, a daily newspaper published by appellant at Danville, Ill.

Appellee is the president of Greer college, an institution of learning located at Hoopeston, Vermilion county, Illinois. In a contest between Hoopeston and Danville to secure the location of the teacher's institute for the year 1898, appellee was very active in the effort to secure its location at Hoopeston, believing that it would benefit his institution. A circular letter had been sent out setting forth the advantages of Hoopeston, and extending to the teachers an invitation to cast their vote on an inclosed postal in favor of Hoopeston. A few days after this circular letter had been mailed, appellee and others called at the office of the county superintendent, where a conference was held, and it was agreed that the superintendent should draft a circular letter to the teachers of the county in which he was to place appellee in a proper light and controvert certain attacks that had been made upon him in the columns of appellant's newspaper. It was agreed that until this letter should be sent out neither side should solicit for the location of the institute, and that before being printed

the superintendent should send to the Hoopeston parties for their approval, a draft of the letter, and that it should not be printed or sent out until after he had received their approval. The superintendent forgot to send the draft of his letter to Hoopeston for approval, and did not send them a copy until he had had it printed and commenced mailing it out to the teachers. A circular letter was then issued from Hoopeston, at the instance of appellee, setting forth to the teachers advantages of the location of the institute at that place. This occasioned, in the columns of appellant's newspaper, an attack upon the appellee, in which he was charged with misrepresentation, "sly chicanery, underhand methods," and "shameless skullduggery." Thereupon this suit was brought.

From the declaration we quote the following as the alleged libelous publication:

"On Monday the decision will be given which will locate the Teachers' Institute either in Danville or Hoopeston. The methods of the Hoopeston campaign have been a wonderful and fearful thing to behold, and no depth of subterfuge has been too low for the misrepresentation of the man in charge (meaning plaintiff) to sink to it.

"Be it understood, that in his (meaning the plaintiff) sly chicanery and underhand methods he (meaning plaintiff) is no representative of the people of Hoopeston. A short time after the agreement had been made to leave the matter to a fair vote, which each party pledged not to influence in any way, President McClure (meaning the plaintiff) sent out a circular letter, presenting the merits of Hoopeston, and incidentally stating that the circular was issued with the knowledge and consent of Superintendent Griffith. Superintendent Griffith brands this as a statement willfully false, and he (meaning Superintendent Griffith) knew nothing of the circular, nor of the continued shameless skullduggery of the Hoopeston man (meaning the plaintiff). This circular fell into friendly hands, and was forwarded to the superintendent, who publicly denied that it had his countenance.

"When the result is announced Monday there is no doubt that the verdict will be in favor of Danville, as this city has not only offered the most advantages and the best facilities, but has kept faith in the matter. Whatever may be

the outcome, the contest will have been valuable to the citizens of Vermilion county, in that it will have shown them a few things about the head (meaning the plaintiff) of the only college in the county."

The appellant filed the general issue and a plea of justification. Upon the issues thereby raised, a trial was had by a jury resulting in a verdict of $500 for appellee. A motion for new trial was overruled and a judgment entered upon the verdict.

Appellant urges reversal upon the grounds, first, that the verdict is against the evidence upon the plea of justification, second, upon the ground of misconduct of a juror.

Considering the station in life occupied by appellee· and his position at the head of an institution of learning, it can be readily seen how injurious the publication of the article above quoted would be to him.   We do not care to extend this opinion by a lengthy discussion of the evidence adduced before the jury in an effort to justify the publication of the article.   We shall be content to say that we are unable to discover from the evidence contained in the record any words spoken or written by appellee which in any degree reflect upon the character or actions of any person. It seems that he made nothing more than an earnest and vigorous effort in an honorable way to secure the location of the teachers' institute in the town which was the seat of the college over which he presided.   His conduct in sending out letters after the conference at the superintendent's office was entirely justified in ·view of the fact that the superintendent, through forgetfulness, had failed to redeem his promise to send a draft of his proposed circular to him for approval before having it printed.

Pending the trial, a juror by the name of Gibson, during the noon hour, just before the convening of court, in the presence of the attorneys on both sides, the presiding judge and the officers of the court, had a short conversation with appellee with reference to sending his son to Greer College. The juror handed to appellee an envelope containing his son's address, to which appellee was requested to send a catalogue of the school.   We are unable to discover any-

thing in the conduct of the juror or appellee to justify the conclusion that the verdict was influenced in any way by what was there said or done.

We regard the attack made upon appellee in appellant's newspaper as intemperate, malicious and wholly unjustified.

We look upon the damages fixed by the jury as very low and see no error in the record.    Judgment affirmed.