[No. 5258.   Decided April 28, 1905.]

JOHN BYRNE, *Respondent,* v. GEORGE H. FUNK,
*Appellant.*[1]

LIBEL—WORDS LIBELOUS PER SE—PUBLISHING OF OFFICER THAT HE WAS A LIAR AND POLTROON. It is libelous *per se* to publish of a public officer that certain figures disputed by him were, at the time, known by him to be true, followed by an offer to forfeit $50 if the writer could not convince the plaintiff, before his friends, of being a "liar and a poltroon," if he would accompany the writer to the public records.

LIBEL—PRIVILEGED COMMUNICATIONS—DEFENSES. Such a publication is not privileged, in the absence of express malice, by reason of the fact that defendant was drawn into a newspaper controversy through attacks by the defendant, since the right to defend oneself ·does not extend to statements unnecessarily defamatory.

1Reported in 80 Pac. 772.

SAME—CRITICISM OF PUBLIC OFFICER.  A statement, if false, is not privileged as fair comment and criticism of a public officer, although made in good faith.

SAME—QUALIFIED PRIVILEGE—QUESTION FOR COURT.  It is for the court to determine whether a publication is qualifiedly privileged, and it is not error to refuse to submit the question to the jury.

LIBEL—MALICE—NOT ELEMENT UNDER THE CODE—STATUTES—CONSTRUCTION—SPECIAL VERDICT.  Under Bal. Code, § 7087, defining libel, malice is not a necessary element of civil libel, hence a special finding of no malice is not inconsistent with a general verdict for the plaintiff.

Appeal from a judgment of the superior court for Thurston county, Linn, J., entered February 26, 1904, upon the verdict of a jury rendered in favor of the plaintiff, in an action for libel.  Affirmed.

*W. I. Agnew* and *M. G. Royal,* for appellant, contended among other things, that an answer to an attack upon the writer's character is privileged, in the absence of express malice.  Townsend, Slander and Libel (4th ed.), p. 388; Newell, Slander and Libel (2d ed.), pp. 388-392, 519; Hageman, Privileged Communications, p. 204; Odgers, Libel and Slander (3rd ed.), p. 253.  The law looks with but little favor on a plaintiff who himself provokes the trouble.  *Bigney v. Van Benthuysen,* 36 La. Ann. 38; *Child v. Homer,* 13 Pick. 503; *Pugh v. McCarty,* 40 Ga. 444.  Words not actionable *per se,* used on a conditionally privileged occasion, are actionable only upon proof of special damages.  18 Am. & Eng. Ency. Law (2d ed.), 1023, 1029, 1033; 1 Jaggard, Torts, p. 530; Hageman, Privileged Communications, §§ 189-197; *Kimble v. Kimble,* 14 Wash. 369, 44 Pac. 866; *Howland v. Flood,* 160 Mass. 509, 36 N. E. 482; *Atwater v. Morning News Co.,* 67 Conn. 504; *Washburn v. Cooke,* 3 Denio 110; *White v. Nicholls,* 3 How. 266, 11 L. Ed. 591.  As to the abuse of

a privileged occasion, the ultimate question is, was the de-
fendant actuated by express malice. *Fresh v. Cutter,* 73
Md. 87, 20 Atl. 774, 25 Am. St. 575, 10 L. R. A. 67;
*Hill v. Durham,* 97 Hun 335; *Brow v. Hathaway,* 13
Allen 239; *Chaffin v. Lynch,* 84 Va. 884, 6 S. E. 474;
*Gassett v. Gilbert,* 6 Gray 94.

*Vance & Mitchell,* for respondent.

PER CURIAM.—This is an action to recover damages for
an alleged libel. The complaint charges that the defend-
ant published, and caused to be printed, of and concern-
ing the plaintiff, in a newspaper called the "Morning
Olympian," printed and published in the city of Olympia,
and generally distributed and circulated therein, the false
and defamatory matter following, to wit:

"Mr. Byrne, you say something about an easily found
evidence as to my reliability as regards figures, and then
you quote me as saying that the current expense fund has
paid into it $2,382.57, and go on to say that the amount
actually paid into it was for the three years jointly
$4,293.86. Now, Mr. Byrne, you were quibbling when
you made that statement. I admit that there was
$4,293.86 paid into the current expense fund, but John,
the fact is, and you well knew it when you were get-
ting your figures, that there must be paid out of it that
amount (in order to give the state of Washington and the
city of Olympia the face of their taxes, which the law en-
titles them to), the difference between your figures and
mine, my figures being $232.51, not $2,382.57 as you have
found it. I gave the amount the fund will permanently
enjoy and you knew it when you were looking up your
figures, for the deputy in the treasurer's office who got
you the figures told you so. Now, John, if you want to
further dispute these figures, say so and bring with you to
my office two good reliable business men of this city (two
of your own friends if you prefer), and I will go with you

down to the treasurer's office and look up these figures in the records (they are nearly all on the same page), and if I cannot convince you before your friends of 'Being a liar and a poltroon,' I will forfeit $50 for the board to entertain themselves with."

The above appeared in said newspaper on the 8th day of August, 1902, in the form of a communication, under the headline: "An Open Letter to Mr. Byrne," and purported to have been signed by the defendant. The complaint contains a demand for damages in the sum of $5,000. Demurrer to the complaint having been overruled, the defendant answered, admitting that he furnished the publisher of said paper with a communication for publication therein, and that the above quoted words are an excerpt therefrom, with certain exceptions as to figures not material to be noted here. The answer alleges that, subject to the correction of said figures, the matter set forth in the communication was true as published. The affirmative matter of the answer is extensive and circumstantial, showing that the plaintiff was a member of the board of county commissioners of Thurston county; that the defendant was county attorney and legal adviser of the board; and setting up facts constituting the alleged history of a compromise settlement of taxes owing to said county by the Northern Pacific Railway Company, which settlement, it is alleged, was effected without the advice or counsel of the defendant. Newspaper communications of the plaintiff upon this subject, involving the defendant, are also set forth. It is unnecessary for the purposes of this appeal to set out such affirmative matter here. The cause was tried before a jury, and a verdict was returned in favor of plaintiff, assessing his damages at the sum of $1. The following special findings were also made and returned by the jury:

"Was it the purpose of the defendant in publishing Exhibit 'C,' attached to the amended answer in this action, in the Morning Olympian of date Aug. 8, 1902, to protect his own character from injury by reason of the statements made concerning him by the plaintiff in this action, before the Taxpayers League meeting on August 2, 1902, and by reason of plaintiffs publication in the Morning Olympian, on date Aug. 6, 1902, of Exhibit 'B,' attached to the amended answer in this case? Answer: Yes. Was the defendant, in publishing Exhibit 'C' attached to the amended answer in this action, in the Morning Olympian of date August 8, 1902, actuated and inspired by malice and a desire to injure the plaintiff in this action? Answer: No."

Based upon the special findings, the defendant moved for judgment dismissing the action, notwithstanding the general verdict. The motion was denied, and judgment upon the general verdict was entered in favor of plaintiff, for the sum of $1 and costs. The defendant has appealed.

It is contended that the demurrer to the complaint should have been sustained. Appellant says that the lower court held the language of the published communication to be libelous *per se,* on the theory that it charged respondent with being a "liar and a poltroon." Appellant argues that the words alleged to be defamatory were merely used in a wagering offer, whereby he submitted to respondent a plan for showing that the latter's statements were untrue, and that, if he did not convince him before his friends that respondent was a liar and a poltroon, appellant should forfeit $50. It is contended that the statement was not an absolutely injurious one, touching the then existing character of respondent, but that it related entirely to his future character, if the proposed course should establish the character indicated by the language.

It must be conceded that the argument is ingenious, but

we are not prepared to agree with its logic. It seems to be based upon a syllogism somewhat as follows: "The character of respondent is and has been such as led him to say certain things. It is proposed to prove in the future that his statements were untrue. Therefore, his *future* character *may* be that of a liar and a poltroon." The fallacy of the argument consists in the fact that the proofs proposed to be submitted related to past and completed acts, and not to something that might or might not occur in the future, and which, if they should occur, would establish the character indicated. The ordinary reader cannot peruse the communication without understanding that the words were directed to the character of respondent as it then was. Before using the objectionable words, the communication stated the following: "I gave the amount the fund will permanently enjoy, and you knew it when you were looking up your figures, for the deputy in the treasurer's office who got you these figures told you so." To the ordinary mind, it would seem that the communication would have been no more suggestive if the above quoted words had been immediately followed by these: "Therefore, you are a liar and a poltroon." We think the communication was libelous *per se*, and that it was not error to overrule the demurrer to the complaint.

Appellant's next contention concerns the instructions, and the refusal to instruct as requested. The argument is that this was a privileged communication. The record shows that appellant was drawn into the newspaper controversy through attacks made upon him in the same manner by respondent. It is insisted that appellant had the right to answer the charges, and that his answer, in the absence of express malice, was privileged and furnished no basis for liability, even though injurious to respondent.

It is true that one thus attacked has the right to defend himself, but if he goes further than to make full answer and reasonable explanation, and uses statements unnecessarily defamatory, the communication is not privileged. *Chaffin v. Lynch,* 84 Va. 884, 6 S. E. 474; *Brewer v. Chase,* 121 Mich. 526, 80 N. W. 575, 80 Am. St. 527, 46 L. R. A. 397.

"But the better view seems to be that, while any citizen has the right to publish to the general public a fair comment and criticism on matters of public concern, he will not as a general rule be protected if he goes further and publishes false statements of a defamatory character against an individual." 18 Am. & Eng. Ency. Law (2d ed.), 1041.

The respondent was, as we have seen, a public officer. The more general rule relating to published criticism of public officers is briefly stated as follows:

"The official acts of public officers may lawfully be made the subject of fair comment and criticism, not only by the press, but by the members of the public. But the prevailing rule is that charges imputing a criminal offense or moral delinquency to a public officer cannot, if false, be privileged, though made in good faith, and this though the charge relates to an act of the officer in the discharge of his official duties." 18 Am. & Eng. Ency. Law (2d ed.), 1041.

Whether the writing came within a qualified privilege was for the court, and not for the jury to determine. *Brewer v. Chase, supra.* Under the rule as to such privileged communications, we think this one went beyond the privilege and was excessive, and it was not error to refuse to submit that question to the jury.

It is further insisted that there can be no recovery unless malice in fact is shown. Whatever may be said of

malice, as a necessary element of actionable libel at common law, or even under the statutes of some states, still we think that our statute eliminates it. The statute, Bal. Code, § 7087, is as follows:

"A libel is the defamation of a person made public by any words, printing, writing, sign, picture, representation, or effigy tending to provoke him to wrath, or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse; or any defamation, made public as aforesaid, designed to blacken and villify the memory of one who is dead, and tending to scandalize or provoke his surviving relatives or friends. Every person who makes, composes, or dictates a libel, or procures the same to be done, or who publishes or wilfully circulates such libel, or in any way knowingly and wilfully aids or assists in making, publishing, or circulating the same, shall be punished by imprisonment in the county jail not more than one year, or by fine not exceeding one thousand dollars, or by both such fine and imprisonment."

It will be seen that malice is not mentioned in the statute, and the context is such as leads us to believe that the legislature intended to exclude actual malice as a necessary element of libel. Respondent aptly observes in his brief that the statute is essentially a peace statute. It was evidently intended to make libelous the publication of matter which *tends* to expose to public hatred, contempt, or ridicule, without regard to the existence of actual malice. Such a statute we believe is wholesome, since it may have the effect to hold in check those who might otherwise act hastily but without real malice, and yet in the public mind their acts might as effectually expose another to contempt as though done with actual malice. In *State v. Nichols*, 15 Wash. 1, 45 Pac. 647, this court said:

33-38 WASH.

"It is doubtful under this definition of the crime whether the question of malice or of intention enters in, . . ."

That was a criminal case, and the question was not further discussed. But the excerpt shows that the court then doubted that actual malice is, under our statute, a necessary element of even criminal libel. We think it must at least be held that, in a civil action for damages, it is not a necessary element. In *Moore v. Francis,* 121 N. Y. 199, 23 N. E. 1127, 18 Am. St. 810, 8 L. R. A. 214, which was a civil action, the court said:

"The evidence renders it clear that no actual injury to the plaintiff was intended by the defendants, but it is not a legal excuse that defamatory matter was published accidentally or inadvertently, or with good motives, and in an honest belief in its truth."

It follows that the special finding of the jury that respondent was not actuated by malice is not inconsistent with the general verdict awarding recovery.

The judgment is affirmed.