[No. 7972. Department Two. September 29, 1909.]

EDWARD F. QUINN, *Respondent*, v. REVIEW PUBLISHING COMPANY, *Appellant*.[1]

LIBEL AND SLANDER—PUBLICATIONS ACTIONABLE PER SE—GRAFT IN OFFICE. A newspaper publication falsely charging a city inspector of sidewalks with being part of a system of jobbery and graft in the management of city contracts, is libelous *per se*, since it imputes criminal offenses or moral delinquency in office tending to bring him into public hatred, contempt, or ridicule.

LIBEL AND SLANDER—DEFENSES—TRUTH. The truth of published statements concerning a public officer is a defense to an action for libel.

SAME—DEFENSES—TRUTH—EVIDENCE—SUFFICIENCY. The truth of a newspaper publication charging a city sidewalk inspector with graft and jobbery is not necessarily established by evidence that many sidewalks were poorly constructed and not up to the requirements of the contracts and that the inspector had been discharged for incompetency, the same being competent but not conclusive evidence.

SAME—WORDS AND PHRASES—"GRAFT." A charge of "graft" in a libelous publication implies a dishonest or corrupt transaction in office.

SAME—PRIVILEGED COMMUNICATIONS—FALSE ACCUSATION OF OFFICER. Where a newspaper charge of "graft" respecting a public officer is found to be false, it is without the rule of privilege, and actionable, although made in good faith.

[1]Reported in 104 Pac. 181.

SAME—MITIGATION—EVIDENCE—ADMISSIBILITY. A libelous pub-
lication in a newspaper is not mitigated or cured by another article
in the same issue, and the latter is properly excluded.

APPEAL — REVIEW — HARMLESS ERROR — ADMISSION OF EVIDENCE.
Error, if any, in permitting the plaintiff in libel to show his reputa-
tion for honesty, is cured where the court expressly withdrew such
evidence and instructed the jury not to consider it.

Appeal from a judgment of the superior court for Spo-
kane county, Sullivan, J., entered December 5, 1908, upon
the verdict of a jury rendered in favor of the plaintiff, in
an action for libel. Affirmed.

*H. M. Stephens*, for appellant.

*Alex. M. Winston*, for respondent.

MOUNT, J.—The respondent brought this action to re-
cover damages upon two causes of action, for alleged libels
published against him in the regular issues of the Spokes-
man-Review, on June 6 and 7, 1908. The action was tried to
the court and a jury. A verdict was returned in favor of the
plaintiff on the first cause of action for $999, and on the
second cause for one dollar. The defendant has appealed.

It appears that the respondent was appointed inspector of
sidewalks and cement and concrete work thereon for the city
of Spokane, in May, 1904; that he continued as such in-
spector until July, 1905, when he became the chief inspector
of such work until June 5, 1908, when he was discharged.
It was respondent's duty to inspect all sidewalk work done
under contracts with the city, and to see that the terms
of such contracts were faithfully complied with by the con-
tractors. While he was chief inspector he had several in-
spectors under him, and it was his duty to instruct these
inspectors, and also to see that they performed their duty.
On June 5, 1908, respondent was discharged for alleged
incompetency, and the next day the Spokesman-Review pub-
lished an article as follows:

"BLOW AT GRAFT AND JOBBERY.

"One by one facts are being disclosed by City Engineer
Ralston which demonstrate that the management of the city

business under the old Daggett-Omo-Gill-McIntyre regime, now drawing slowly to an end, has been honeycombed with inefficiency, favoritism and graft. The domination of the board of public works by a majority of the members of the city council, and the presence until recently in the city engineer's office of an engineer who conducted that office with little regard for the efficiency in the service, together with the prevalence throughout of an iniquitous and corrupting system of political pull, have conspired to undermine the integrity of the business and of the city administration for the profit of favored contractors and others having business dealings with the city. Disclosures of the past few days have shown that appointments to places under the Omo board of public works have been made upon recommendation of members of the council with no regard for the fitness of the applicants; that specifications for contract work have been drawn carelessly in the interests of dishonest or careless contractors, that the system of inspection over street improvement contracts has consisted of one-half idle pretense and the other half deliberate favoritism, exerted in behalf of contractors who were influential with the political powers behind the foreman of inspectors, Ed. Quinn. City Engineer Ralston is to be heartily commended for his action in securing the removal of Foreman Quinn and thereby striking one effective blow at this system of graft and jobbery. Already the efforts of Mayor Moore to restore responsible government to the city hall in the interests of the taxpayers are beginning to bear fruit."

And on June 7, 1908, another article was published as follows:

"CAMERA CATCHES FALSE INSPECTORS.

"CIVILIAN SPIES ALSO AID IN DETECTING CITY SIDEWALK FRAUDS.

"A small army of volunteer civilian inspectors and a professional photographer were employed by City Engineer Ralston in procuring the evidence of the collusion of city inspectors through which cement contractors have been able to cheat the city in cement work by from 15 to 35 per cent of the amount of cement called for in their contracts and from 10 to 30 per cent of the actual cost of the work. As a result of the efficient employment of these agencies the engineer has made a case against some of the inspectors which is un-

shakable, and it was upon this evidence that he discharged a number of inspectors and procured the discharge of Foreman Quinn for inefficiency. Some of the disclosures obtained by the engineer prove the ingenuity of the contractors themselves, but others indicate that the skimping of cement work was accomplished through the frankly confessed negligence or collusion of the inspectors employed by the city to watch the contractors."

It is argued by the appellant that these articles are not libelous *per se*, but, if libelous, are true, and that therefore the trial court erred in denying the appellant's motions made at the close of respondent's evidence, and again at the close of all the evidence, for a directed verdict. In the case of *Wofford v. Meeks*, 129 Ala. 349, 30 South. 625, 87 Am. St. 66, 55 L. R. A. 214, the supreme court of Alabama quoted from *Iron Age Publishing Co. v. Cradup*, 85 Ala. 520, as follows:

"Generally, any false and malicious publication, when expressed in printing or writing or by signs or pictures, is a libel, which charges an offense punishable by indictment, or which tends to bring an individual into public hatred, contempt, or ridicule, or charges an act odious and disgraceful in society. This general definition may be said to include whatever tends to injure the character of an individual or blacken his reputation, or imputes fraud, dishonesty, or other moral turpitude or reflects shame or tends to put him without the pale of social intercourse."

And then said:

"This quotation clearly recognizes the principle that, if the words employed in the alleged libelous publication impute dishonesty or corruption to an individual, they are actionable *per se*,—a principle well established in other jurisdictions. 13 Am. & Eng. Ency. Law, 295, 296, and note 3. So too, it is libelous to impute to any one holding office that he has been guilty of improper conduct in office, or has been actuated by wicked, corrupt, or selfish motives. Newell, Defamation, Slander & Libel, p. 69."

Under this definition, which is no doubt correct, the publications in this case were clearly libelous *per se*. They

charge that the management of the city business under the old regime has been honeycombed with inefficiency, favoritism, and graft; that the domination of the board of public works by a majority of the city council and the presence of an engineer, together with the prevalence throughout of an iniquitous and corrupting system of political pull, have conspired to undermine the integrity of business and of the city administration for the profit of favored contractors; that the system of inspection over street improvement contracts has consisted of one-half idle pretense and the other half deliberate favoritism, exerted in behalf of contractors who are influential with political powers behind the foreman of inspection Ed. Quinn. City Engineer Ralston is to be commended for his action in securing the removal of Foreman Quinn, and thereby striking an effective blow at this system of graft and jobbery.

It is plain that this article and the one published the next day, upon which the second cause of action is based, clearly charged the respondent with being part of the system of jobbery and graft in the management of city contracts, and the main one through whom such jobbery and graft were accomplished; and it was no doubt intended thereby to charge, and did charge, the respondent with being guilty of improper conduct in office, and that he had been actuated by wicked, corrupt and selfish motives. The articles were therefore libelous *per se*. If these charges were true, the newspaper was privileged to publish them.

" 'But the prevailing rule is that charges imputing a criminal offense or moral delinquency to a public officer, cannot, if false, be privileged, though made in good faith, and this though the charge relates to an act of the officer in the discharge of his official duties.' " *Byrne v. Funk*, 38 Wash. 506, 80 Pac. 772.

If untrue, the newspaper must be responsible for the damages done in its publication. *Bourreseau v. Detroit Evening Journal Co.*, 63 Mich. 425, 30 N. W. 376, 6 Am. St.

320. The truth of the accusations made will, of course, be a defense. *Leghorn v. Review Publishing Co.*, 31 Wash. 627, 72 Pac. 485; *McClure v. Review Publishing Co.*, 38 Wash. 160, 80 Pac. 303.

Appellant insists that the evidence shows that the articles were true, or substantially so, and that, therefore, it was the duty of the court to direct a verdict in favor of the appellant. This seems to have been the principal issue of fact, if not the only issue in the case, and we think it was fairly shown that in many instances sidewalks were poorly constructed and that they were possibly not as thick as the contract called for, and also that the concrete mixture in some cases was not in the proportion of one of cement to three of sand and five of gravel or crushed rock, as provided for in the contracts, and also that the respondent was discharged for incompetency as city inspector. But these facts, being true, did not necessarily show graft and jobbery as charged in the published articles. Graft, as defined by the Century Dictionary and Encyclopedia, Vol. 3, p. 2591, means:

"Dishonest gain acquired by private or secret practice or corrupt agreement or connivance, especially in a position of trust, as by offering or accepting bribes."

The trial court correctly instructed the jury that graft "is a dishonest transaction in relation to public or official acts, and a further definition of the word graft is as commonly used to designate an advantage which one person by reason of his peculiar position or superior influence or trust acquires from another." *Craig v. Warren*, 99 Minn. 246, 109 N. W. 231; *State v. Sheridan*, 14 Idaho 222, 93 Pac. 656, 15 L. R. A. (N. S.) 497.

While the facts shown in this case, as stated above, were all circumstances proper to be shown as tending to prove dishonesty or corruption, they do not necessarily prove that the respondent was dishonest or profited by reason thereof, or that he was himself guilty of graft or jobbery, or that he intentionally permitted contractors to job or graft the

city.   These facts may show that respondent was incompetent, but they are not conclusive of dishonesty.   The most that may be said of such facts is that they are circumstances from which the jury might have found dishonesty or graft and jobbery.   They were, therefore, for the jury, and the jury having found that they do not constitute graft and jobbery, that finding is conclusive here.

It is also claimed that the court erred in excluding a certain article which was published in the same issue of the paper as the one where the libel complained of was published.   This article did not in any way mitigate or attempt to cure the libel published, and was therefore properly excluded.   If it had attempted to do so, it would not have been admissible.

Exhibit No. 27 appears to be a report by respondent of certain defective work done.   It tends to show that respondent was attempting, at least, to do his duty.   No good reason is offered for its introduction.   We have already referred to the question of privileged publications and need not discuss this assignment further.   The charge of graft and jobbery having been found false by the jury, it follows that the articles were without the rule of privileged publication, and that such charges were unfair comments. If the court erred in permitting respondent to prove his reputation for honesty, that error was cured, because the court expressly withdrew such evidence and instructed the jury not to consider it.

We find no error in the record, and the judgment must therefore be affirmed.

RUDKIN, C. J., PARKER, DUNBAR, and CROW, JJ., concur.