[No. 14393.  Department Two.  April 3, 1918.]

N. D. McKILLIP, *Appellant,* v. GRAYS HARBOR PUBLISH-ING COMPANY *et al., Respondents.*[1]

LIBEL AND SLANDER—WORDS LIBELOUS PER SE—EXPOSING CANDIDATES TO OBLOQUY. A newspaper article published of a candidate for office charging him with waging a campaign of slander and lies and vicious methods and with being on that account, unworthy of the office, is libelous *per se,* within Rem. Code, § 2424, relating to publications tending to expose any one to hatred or obloquy or to deprive him of public confidence or injure him in his business or occupation.

SAME—WORDS LIBELOUS PER SE—CHARGING CRIME. Such publication is libelous *per se* as charging the commission of a crime under Rem. Code, § 4964, denouncing the knowingly and wilfully making of any false assertion at any election concerning any candidate tending to prevent his election.

SAME—PRIVILEGED COMMUNICATION—FALSEHOODS CONCERNING CANDIDATES. The publication of charges against a candidate for office,

¹Reported in 171 Pac. 1026.

libelous *per se*, knowing them to be false, is not privileged, under Rem. Code, § 2430, relating to communications addressed by and to persons concerned therein under reasonable grounds for an innocent motive, merely because addressed to and signed by electors; since the privilege is not, on its face, extended to falsehoods, but presents a mixed question of law and fact.

SAME—PRIVILEGED COMMUNICATIONS—PAID ADVERTISEMENTS—STATUTES. Rem. Code, § 4833, permitting the publication of "paid advertisements" of candidates for office, is restrictive, and does not extend the law of privilege or exempt the publisher from responsibility for libel.

Appeal from a judgment of the superior court for Grays Harbor county, Abel, J., entered May 18, 1917, upon sustaining a demurrer to the complaint, dismissing an action for libel. Reversed.

*O. M. Nelson,* for appellant.
*Bridges & Bruener,* for respondents.

CHADWICK, J.—This is a civil action for damages arising out of the publication of an alleged libelous article. A demurrer was interposed to the complaint and sustained. The plaintiff elected to stand upon his complaint, and judgment was entered dismissing the action. This appeal followed.

The complaint alleges, in substance, that the respondent Grays Harbor Publishing Company is a corporation organized and existing under the laws of this state, and as such is engaged in the publication of the Aberdeen Daily World, a daily newspaper of general circulation throughout the state; that the respondent W. A. Rupp claims to be the publisher and is the editor of such paper, and the manager of the respondent corporation; that, as such he has charge of the advertisements and other printed matter; that the appellant has, for many years past, been a teacher in the public schools of the state; that, since the first day of July, 1902, he has held a life diploma issued to him by the

state of Washington; that, during many years past, he has been acting as county superintendent of schools for Grays Harbor county; that, during such time, he possessed the confidence of his friends and fellow men; that, during the year 1916, he was "again" a candidate for county superintendent of schools for Grays Harbor county, both in the primaries and general election; that, on the 6th day of November, 1916, the respondents knowingly, wilfully and maliciously published, or caused to be printed and published of and concerning the respondent personally and as a teacher and candidate for office, the following article in the Aberdeen Daily World:

"(PAID ADVERTISEMENT)

"Paid for by friends of T. W. Bibb, Republican Nominee for County Superintendent of Schools.

"We, the undersigned voters of Grays Harbor county, hereby publicly express our complete confidence in T. W. Bibb, republican candidate for superintendent of schools, and commend him to the voters of this county as worthy of their support. We wish also to publicly denounce the campaign of abuse and slander being waged against him by N. D. McKillip, his opponent, and we warn all loyal friends of the public schools of this county not to be misled thereby. Over and above many other disqualifications which, in our judgment, render McKillip unfit for this important office, his conduct in thus waging a campaign of *slander* and *lies* against an honorable opponent, *brands him as unworthy of the office he seeks.* Let all true men and women who like to see fair play, place the seal of disapproval on McKillip's *vicious methods* by rallying to the support of that clean and deserving young man, T. W. Bibb. We vouch for his honesty and for his honor." (Italics ours.)

The article purports to have been signed by more than sixty names and concludes with the words "and hundreds of others." It is further alleged that the

charges in the article quoted are false and untrue, and
were known to be such by the respondents at the time
they were published; that the publication of the article
was malicious and was intended to, and did, expose the
appellant to hatred, contempt, ridicule and obloquy,
and was intended to, and did, deprive the appellant of
the benefit of public confidence, social intercourse, and
the respect of his friends and the electors of the coun-
ty; that T. W. Bibb, the person named in said article,
was an opposing candidate at the general election of
1916; that the appellant did not at any time make any
false assertion or propagate any false report concern-
ing Bibb or his candidacy for office which had a tend-
ency to prevent his election, or with a view thereto;
that, because of the publication of said article, the
plaintiff has suffered mental anguish, injury to his
feelings, his character and reputation; that he has
been deprived of public confidence and the respect of
his fellow men; that his mental and physical vigor
were thereby impaired; and that he was "thereby
defeated for election as county superintendent of
schools."

The appeal presents two principal questions: (1) Is
the article set forth libelous *per se*; (2) Is it upon its
face privileged. These questions will receive consid-
eration in the order stated.

The demurrer was based upon two grounds: (1)
That the complaint does not state facts sufficient to
constitute a cause of action; and (2) that the article
set forth is not libelous, and that the publication of the
same was privileged.

The code, Rem. § 2424, provides that,

"Every malicious publication by writing . . .
which shall tend: (1) To expose any living person
to hatred, contempt, ridicule or obloquy, or to deprive
him of the benefit of public confidence or social inter-

course; . . . or (3) To injure any person . . . in his . . . business or occupation, shall be a libel.''

Section 2425 provides that every publication having the tendency or effect mentioned in the preceding section shall be deemed malicious unless justified or excused. It further provides that

"Such publication is justified whenever the matter charged as libelous charges the commission of a crime, is a true and fair statement, and was published with good motives and for justifiable ends. It is excused when honestly made in belief of its truth and fairness and upon reasonable grounds for such belief, and consists of fair comments upon the conduct of any person in respect of public affairs, made after a fair and impartial investigation.''

Section 2427 provides that,

"Every editor or proprietor of a . . . newspaper . . . ., and every manager of a copartnership or corporation by which any . . . newspaper . . . is issued, is chargeable with the publication of any matter contained in any such . . . newspaper . . .''

I. The article is libelous *per se. Byrne v. Funk,* 38 Wash. 506, 80 Pac. 772; *Lathrop v. Sundberg,* 55 Wash. 144, 104 Pac. 176, 25 L. R. A. (N. S.) 381; *Chambers v. Leiser,* 43 Wash. 285, 86 Pac. 627; *Wilson v. Sun Pub. Co.,* 85 Wash. 503, 148 Pac. 774, Ann. Cas. 1917B 442; *Wells v. Times Printing Co.,* 77 Wash. 171, 137 Pac. 457; *Quinn v. Review Pub. Co.,* 55 Wash. 69, 104 Pac. 181, 133 Am. St. 1016; *Lindley v. Horton,* 27 Conn. 58; *State v. Keenan,* 111 Iowa 286, 82 N. W. 792; *Upton v. Hume,* 24 Ore. 420, 33 Pac. 810, 41 Am. St. 863, 21 L. R. A. 493; *Riley v. Lee,* 88 Ky. 603, 11 S. W. 713, 21 Am. St. 358; *Belknap v. Ball,* 83 Mich. 583, 47 N. W. 674, 21 Am. St. 622, 11 L. R. A. 72; *Danville Democrat Pub. Co. v. McClure,* 86 Ill. App. 432; *Colby v. Reynolds,* 6 Vt. 489, 27 Am. Dec. 574; 25 Cyc. 336; 18 Am. & Eng. Ency. Law (2d ed.), 920.

In *Byrne v. Funk, supra,* it was held that a published article charging one with being (a) a "Liar and a poltroon" was libelous *per se,* and that a charge imputing a criminal offense or moral delinquency to a public officer was libelous. In the *Lathrop* case, a publication which insinuated that the appellant was not a reputable physician and classing him with criminal practitioners, patent medicine fakirs, quacks, etc., was held libelous. In the *Quinn* case, it was held that charging the respondent, an officer holding by appointment, "with being a part of the system of jobbery and graft in the management of city contracts" was libelous *per se.* In the *Lindley* case, it was held that a publication charging the plaintiff with being a "liar" was libelous. In *State v. Keenan,* the court said that any charge which is within the definition of the statute is libelous.

The appellant contends that the article charges him with the commission of a crime under the provisions of Rem. Code, § 4964, which provides:

". . . Nor shall any person at any such election, knowingly and willfully, make any false assertion or propagate any false report concerning any person who shall be a candidate thereat, which shall have a tendency to prevent his election, or with a view thereto, and if any person shall be guilty of any act forbidden or declared to be unlawful by this section, he shall be deemed and taken to be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine and imprisonment, or both . . ."

We think this view is sound. The charge that appellant waged a campaign of "slander and lies" against his opponent and that his method of campaign was "vicious" is equivalent to the charge that he knowingly and wilfully made false assertions against his opponent with a view to prevent his election.

The article clearly charges the appellant with moral delinquency. The charge, in effect, is that he unlawfully lied about an honorable opponent. To a man of normal sensibilities this is a most grievous charge. That it tended to deprive the appellant "of the benefit of public confidence" is not open to doubt, because honest men instinctively shun a liar. This court has uniformly held that, forasmuch as damages in this class of cases are only compensatory, malice is not a necessary element of the cause of action. *Byrne v. Funk, supra; Wilson v. Sun Pub. Co., supra.*

II. Is the article on its face privileged? The respondent asserts that it is "at least qualifiedly privileged" under the provisions of Rem. Code, § 2430, which provides:

"Every communication made to a person entitled to or concerned in such communication, by one also concerned in or entitled to make it, or who stood in such relation to the former as to offer a reasonable ground for supposing his motive to be innocent, shall be presumed not to be malicious, and shall be termed a privileged communication."

The argument is that it is privileged because it is addressed to the electors and has reference to the candidacy of the appellant for an elective office. The complaint charges that the article is false, and was known to be false by the respondents at the time that it was published. This is admitted by the demurrer. It would pass the limit of common sense to hold that the electors are "entitled to or concerned in" the wilful defamation of the character of a candidate for public office, or that any person is "concerned in or entitled to make it." Nor can it with reason be said that the respondents "stood in such relation to the former," that is, to the electors, as to offer a reasonable ground for supposing their motives to be innocent. In interpret-

ing this section we must keep in mind the facts pleaded, that is, that the charge was made knowing it to be false.

In *State v. Sefrit*, 82 Wash. 520, 144 Pac. 725, in commenting upon this section of the code, the court said that it is but a statutory declaration of the general doctrine of qualified privilege "which exists independent of any statute." Referring to Rem. Code, § 2425, the court said that the general rule of privilege had not been enlarged by the statute, "which merely adds the defense of excuse to that of justification which existed at common law." The court further said, speaking of § 2430, that it "affords no immunity to a publisher of a newspaper for the publication of a matter libelous *per se* different from that which it affords to any other person," and that "the general rule of privilege is, we believe, correctly interpreted by the court in *Byrne v. Funk, supra*," where, quoting from 18 Am. & Eng. Ency. Law (2d ed.), p. 1041, the rule is thus stated:

"The official acts of public officers may lawfully be made the subject of fair comment and criticism, not only by the press, but by members of the public. But the prevailing rule is that charges imputing a criminal offense or moral delinquency to a public officer cannot, if false, be privileged, though made in good faith, and this though the charge relates to an act of the officer in the discharge of his official duties."

In *Dauphiny v. Buhne*, 153 Cal. 757, 96 Pac. 880, 126 Am. St. 136, it was held that a publication was libelous which charged that one who was a candidate for reelection as a councilman and who had opposed granting a franchise to a railroad company, voted for the franchise after saying to the company that, if it would purchase groceries from him, he would vote for it. Answering the argument that it was privileged under the provisions of a section similar to § 2430, the court said:

"This privilege must be confined to statements of the truth. There is 'no privilege of publication under

the code, or general law, which will exempt one from responsibility for falsehood."

The court further said that the "reputation and character" of a candidate for public office "are as much entitled to protection against false accusation when he is a candidate for office as at any other time"; that "his talents and qualifications for the office . . ., his faults or vices, in so far as they may affect his official character, may be freely discussed"; that "the public has an interest in knowing the truth about those who occupy or seek public office, but it has no interest in having falsehoods concerning them disseminated."

In *Wilson v. Sun Pub. Co.*, 85 Wash. 503, 148 Pac. 774, Ann. Cas. 1917B 442, the court said:

"At common law, of which the statute is merely declaratory, the truth of a libelous charge, though no defense in a criminal prosecution for libel, was usually a complete defense in a civil action for damages."

The following cases announce a like view: *General Market Co. v. Post-Intelligencer Co.*, 96 Wash. 575, 165 Pac. 482; *Upton v. Hume*, 24 Ore. 420, 33 Pac. 810. In 17 R. C. L. 355, the rule is thus stated:

"Nor as a rule does any privilege attach to the publication of accusations against public officers . . . calculated to bring public officers into contempt."

The object of the privilege accorded to published comments upon public officers or those seeking public office is to inform the electorate of the fitness or unfitness of those falling within either class. To permit the publication of a falsehood concerning a candidate for office which either charges him with the commission of a crime or with being morally depraved would be subversive of the very purpose from which the privilege springs. The press is allowed a large liberty in commenting upon the character and fitness of a candidate

for public office. This liberty, however, does not give it free license to promulgate falsehoods.

The article upon its face is not privileged. Whether it is privileged presents a mixed question of law and fact. The respondents may, if they can, justify or excuse the publication under the provisions of Rem. Code, § 2425, and not otherwise.

It is next asserted that, being a paid advertisement, it is privileged under the provisions of Rem. Code, § 4833. But a reading of this section will disclose that it was not its purpose to enlarge the liberty of the press, but to take from it many privileges which it had theretofore enjoyed and freely exercised. It deals with the subject of paid advertisements, and makes it unlawful for a newspaper to support or advocate the election or defeat of any candidate *at any primary election* for a consideration, provided that the publisher of a newspaper may, subject to named restrictions, publish any matter, article or articles "advocating the election or defeat of any candidate  . . ., and receiving from such person not a candidate, a consideration therefor," if it plainly appears that the article is a "paid advertisement."

Aside from the question of privilege, there is nothing in the statute (§ 4833) which permits the discussion of the merits or demerits of a candidate for office under the caption of a "paid advertisement" that in any way counteracts the virility of the law to protect a man in his good name or fame. If in the heat of partisan politics, a libel is published, those who give it currency must still justify or excuse. The fact that the libel is published in a newspaper and paid for by a third party makes no exemption in favor of the press, for as said in *Riley v. Lee,* 88 Ky. 603, 11 S. W. 713, 21 Am. St. 358:

"The press is under the same restraints. As said, the gravamen of libel consists in its publication. If it

be said the conductors of newspapers may publish, as an advertisement, what has been written by others, the answer is that the conductors of the paper are presumed to know that the writing is an attack upon the character and reputation of another, which no one has the right to make unless the truth of charge actually exists, and its publication in the newspaper not only gives the charge a more extended circulation but gives it a permanent lodgment in the memory of the living, and it may be reproduced when all else concerning the person has been forgotten. Continuing the parallel: If the citizen, for wages, should proclaim and read a libelous writing from the street corners, would the fact that he merely did it as a matter of business protect him? The answer is, no; for the reason that the good name of a citizen is too sacred to be let out on contract. So the answer to the conductors of the paper is, that the advertisement proclaimed the defamation of a person's character, which, unless true, is not a subject of lawful advertisement, consequently they must answer in damages. Also, in reference to publishing such writings, without malice, as a matter of news, for the same reasons the answer comes back that it is not lawful to bruit, thither and yon, defamation of a person's character merely to gratify a morbid appetite for such scandal; that nothing short of the truth of the matter published will be heard in justification of the unwarranted liberties thus taken with a person's good name.

"But it is said that it would be a harsh rule to require conductors of newspapers to be responsible for the truth of the information that they furnish the public. The answer is, that the press must not be the vehicle of attacks upon the character and reputation of a person unless the attack is known to be true; if it is not known to be true, do not publish it; the publication can seldom, if ever, do good, and the indulgence in publications of the sort, not strictly true, would soon deprave the moral sense of society and render it miserable."

The complaint states a cause of action for compensatory damages.

ELLIS, C. J., MOUNT, and HOLCOMB, JJ., concur.