[No. 22811.   Department One.   April 9, 1931.]

EUNICE HOLLENBECK, *Appellant,* v. POST-INTELLIGENCER
COMPANY, *Respondent.*[1]

*Walter B. Allen* and *L. A. Michelson,* for appellant.
*Tanner & Garvin,* for respondent.

HOLCOMB, J.—A demurrer was sustained to the
amended complaint of appellant in an action for libel
and slander.   Appellant refused to plead further, and
the action was dismissed.   This appeal resulted.

The amended complaint, omitting formal parts, is as
follows:

''That plaintiff is and at all times herein mentioned
has been living separate and apart from her husband,
from whom she has been granted an interlocutory
order of divorce; and that the property and business
hereinafter mentioned is and at all times herein men-

[1]Reported in 297 Pac. 793.

tioned was her sole, separate and individual property, and that she is now and at all times herein mentioned was making her home at 1307 Seneca Street, Seattle, Washington.

"That at all times herein mentioned, defendant was and now is a corporation, having its principal office and place of business at Seattle, King County, Washington, and that it is and at all times herein mentioned was engaged in the business of publishing and circulating a certain newspaper, called the 'Seattle Post Intelligencer,' which newspaper at all times herein mentioned had a large and general circulation throughout the state of Washington and particularly in and about the city of Seattle.

"That on or about the 1st day of August, 1929, plaintiff became the tenant under written lease, of those certain premises known as No. 1307 Seneca Street, Seattle, Washington, which is situated in what is known as 'First Hill Residential District' in said city of Seattle, and ever since that time, plaintiff, as such owner and tenant, has been residing therein and conducting a rooming and boarding house at said place.

"That on the 6th day of November, 1929, in its issue of said newspaper, the 'Seattle Post Intelligencer' of that day, the defendant published and caused to be circulated throughout the state of Washington and other places and particularly in and about the city of Seattle, a certain false and defamatory article of and concerning the rooming and boarding house owned and operated by the plaintiff at her said home at 1307 Seneca Street, Seattle, which said article as published in said newspaper is as follows:

" 'GIRLS' PARENTS AVER VICE DEN LURED MINORS.

" 'Prosecutor Colvin Investigates Charge of Attempt to Lead Children Astray.

" 'On the complaint of irate parents the prosecutor's office yesterday started investigation of a group of men alleged to have misled young Seattle girls on a wholesale scale. With definite information that at least three girls were plied with liquor at 1307 Seneca Street, Deputy Prosecutor R. L. Bartling filed charges

of contributing to the delinquency of minors against Jack Vassar, twenty-two, and Andy Head, thirty. The two were arrested and held in $1,000 bail.

" ' "From our information we believe other young girls have been taught to drink by Vassar and Head and their friends at this place," Bartling said.

" 'NAMES WITHHELD.

" 'He added that much more serious charges might be filed. The names of three of the girls were mentioned in the complaints, but the publication was forbidden by the prosecutor, due to their ages. Clues to the identity and addresses of the girls thought to have visited the rendezvous were in the prosecutor's hands.

" '"Exposure of the alleged den where the prosecutor believes many were enticed was brought about by the father of one of the supposed victims, Bartling said.

" ' "The girls range in age from fifteen to eighteen years," he declared.

" 'GIRL RUNS AWAY.

" ' "Just how many girls have been taken there, given strong liquor and otherwise led astray is hard to say. But we know there are others than those whose names we have."

" 'A party last Saturday night led to the downfall of Vassar and Head, according to Bartling.

" '."An acquaintance of the father of one of the girls ascertained she was in the house and told her family," Bartling said. "When her father confronted her, the girl ran away from her home. She has since been found at a relative's home."

" 'Under questioning by Bartling yesterday, three of the girls told frankly of their visits to the house.'

"That said article was false and untrue in this— that the charges as published in said newspaper article were never made to the prosecuting attorney, or to the defendant or to anyone else prior to their said publication by the defendant; and that the said article as published was and is false and untrue in fact.

"That said article was falsely written, published and circulated by the defendant, of and concerning the

plaintiff's home, place of business and herself, and was understood by persons who read the same, to refer to plaintiff's said home, place of business and herself, as the owner thereof.

"That said article was intended by the defendant to lead any one reading the same to believe that the plaintiff's said rooming and boarding house was in fact a vice den, and those reading said article did conclude and understand that plaintiff's said rooming and boarding house was alleged to be a vice den.

"That said article was intended by the defendant to, and did in effect, charge the operator of said rooming house, to wit: the plaintiff herein, with conducting and operating a vice den, and those reading said article formed the opinion therefrom, that the owner of said place was accused of operating a vice den, all of which was false and untrue in this; that no one ever had reason to or had ever charged or accused the said place of being a vice den, either to the prosecuting attorney or to anyone else.

"That upon reading said false and defamatory article and being questioned about it by her friends, relatives and persons with whom she had dealings, plaintiff did, on the same day, to wit: on the 6th day of November, 1929, request the defendant to withdraw and correct said false publication, but defendant did, on said day, refuse to correct or retract the same."

The amended complaint then alleged matters constituting general and special damages to her and to her rooming house and place of business, the damages alleged totaling twenty thousand dollars.

The demurrer was sustained, apparently, upon the ground that the complaint did not state facts sufficient to constitute a cause of action.

█ The theory of respondent is that the article was qualifiedly privileged. It contends that, in the absence of malicious and deliberate use of false and libelous matter, respondent is not liable.

Great reliance is placed by respondent on the decisions in *McClure v. Review Publishing Co.*, 38 Wash.

160, 80 Pac. 303, *Chambers v. Leiser,* 43 Wash. 285, 86 Pac. 627, 10 Ann. Cas. 270, *Dayton v. Drumheller,* 32 Ida. 283, 182 Pac. 102, and 37 C. J. 33, to the effect that, if the averments of a complaint disclose facts constituting a qualified privilege, express malice must be averred.

In the *McClure* case, *supra,* the plaintiff was designated as "Queen of Burglars," but it was distinctly held that the articles there in question had not charged plaintiff with committing a crime.

The rule in this state, contrary to what was said in the *Dayton* case, *supra,* is that malice is immaterial in a civil action for libel, when the article necessarily tends to expose any living person to hatred, contempt, ridicule, or obloquy, or to deprive him of the benefit of public confidence, or social intercourse; or to injure any person, corporation, or association of persons, in his or their business or occupation.

That the article here in question by its imputation of the use of the place mentioned did have a clear tendency to injure appellant and her business or occupation, is too plain for argument. *Wilson v. Sun Publishing Co.,* 85 Wash. 503, 148 Pac. 774, Ann. Cas. 1917B 442.

Where a libel does not name the plaintiff, he may give evidence of all the surrounding circumstances and other extraneous facts which will explain and point out the person to whom the allusion applies. 17 R. C. L. p. 406, § 164.

If evidence may be given which will explain and point out the person to whom the allusion applies, it is certainly necessary and proper first to aver that the article refers to that person.

The complaint alleges that the allusions to the place of business or rooming house operated by appellant were false and untrue. In *Graham v. Star Publishing*

*Co.*, 133 Wash. 387, 233 Pac. 625, we held that the privilege ends when falsity begins, and if, as the complaint alleges, the charge is false, the privilege, if there was one, was therefore exceeded.

It cannot be urged that the article was not libelous because it did not mention the name or business of appellant. The article did mention the place operated by appellant as a rooming house. *Wilson v. Sun Publishing Co., supra.*

The article having a necessary tendency to damage appellant and her business, any allegation of malice was immaterial. See *Wilson* case, *supra*, and cases cited. In *Byrne v. Funk*, 38 Wash. 506, 80 Pac. 772, 3 Ann. Cas. 647, cited in the *Wilson* case, it is expressly so held.

We conclude that, under our decisions, the amended complaint stated a cause of action, and that the demurrer should have been overruled.

The judgment is reversed.

TOLMAN, C. J., MAIN, PARKER, and MITCHELL, JJ., concur.