[No. 27703.  Department One.  March 9, 1940.]

ALGER RYAN *et al., Appellants,* v. HEARST PUBLICATIONS, INCORPORATED, *Respondent.*[1]

*Rummens & Griffin,* for appellants.

*Tanner & Garvin,* for respondent.

SIMPSON, J.—Action in this case was brought to recover damages from defendant for publishing an article in the Seattle Post-Intelligencer, a newspaper owned and published by defendant corporation.

[1]Reported in 100 P. (2d) 24.

The complaint alleges that Alger Ryan, one of the plaintiffs, and Lillian A. Ryan are the father and mother of the sixteen remaining plaintiffs; that, on or about the twenty-sixth day of September, 1937, defendant published in the Sunday edition of its newspaper an article entitled "The end of the $2,000,000,000 'Baker Estate'," which contained the following words of and concerning the plaintiffs individually and collectively, to-wit:

"Mrs. Lillian A. Ryan, of Portland, Oregon, who found the swindle profitable enough to raise 16 children before she was put on trial. Her sentence has been postponed. . . .

"A woman defendant, Mrs. Lillian A. Ryan, 43 years old, of Portland, Oregon, had found it such a profitable racket that she was able to raise sixteen children. The thing looked like a permanent industry, due to go on forever."

That immediately above the first quoted paragraph the publication carried a photographic likeness of the wife and mother, respectively, of plaintiff, Alger Ryan, and the remaining plaintiffs; that the publication further stated immediately above the picture of Mrs. Ryan:

"Three Generations of Crooks Have Collected Millions of Dollars from Three Generations of Gullible Victims for 70 Years in the Belief That They Are Heirs of a Revolutionary Hero Who Never Lived."

A photostatic copy of the entire article was attached to the complaint and made a part thereof.

It was further alleged that, by use of that language, defendant meant that plaintiff Alger Ryan had, in violation of his duties as a father and husband, permitted his wife to supply the sustenance for their children by the practice of a vicious and felonious swindle, and, by reason of the operation of the swindle by his wife, the

children were reared and provided for through the profits thereby obtained; and that the children were reared on the fruits of the fraud and criminal adventure. The complaint continued with the allegation to the effect that the persons who read the article understood and were induced to believe that plaintiff Alger Ryan was a corrupt and indolent father, who had failed in his obligations as a citizen, father, and husband; and that the children owed their existence and rearing to the criminal career in which their mother engaged during the period of their lives. It was finally alleged that the language of the publication was wholly false, defamatory, and untrue.

Plaintiffs conceded for the purpose of argument, however, that Lillian A. Ryan, wife of plaintiff husband, and mother of plaintiff children, had been convicted of a crime.

The defendant demurred to the complaint upon several grounds, one of which was that the facts stated therein did not constitute a cause of action. The demurrer was sustained. The plaintiffs abiding by their pleading, the action was dismissed. They appeal.

Appellants assign as error that the trial court erred in concluding that the language used was not libelous *per se,* and in sustaining the demurrer to the complaint and dismissing the action.

The definition of libel is contained in our criminal statute, Rem. Rev. Stat. (Sup.), § 2424 [P. C. § 8953], Laws of 1935, p. 329, § 1, which reads as follows:

"Every malicious publication by writing, printing, picture, effigy, sign radio broadcasting or which shall in any other manner transmit the human voice or reproduce the same from records or other appliances or means, which shall tend: —

"(1) To expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the

benefit of public confidence or social intercourse; or
. . .

"(3) To injure any person, corporation or association of persons in his or their business or occupation, shall be libel. . . ."

Our attention has been drawn to several legal principles bearing upon cases of this character. If, as in the case at bar, there is no allegation of special damages, but only general damages are alleged, the complaint is demurrable unless the language which defendant is charged with having used is libelous *per se.* *Graham v. Star Pub. Co.,* 133 Wash. 387, 233 Pac. 625; *Magee v. Cohn,* 187 Wash. 157, 59 P. (2d) 1131.

In the absence of ambiguity therein, it is for the court to determine whether a given article is libelous *per se.* In deciding this issue, the court, considering the article in its entirety, is bound to invest the words used with their natural and obvious meanings. The language used may not be extended by the innuendo or conclusions of the pleader; the defamatory character must be certain and apparent from the words themselves. *Graham v. Star Pub. Co., supra; Magee v. Cohn, supra; Blende v. Hearst Publications, Inc.,* 200 Wash. 426, 93 P. (2d) 733.

The names of appellants were not mentioned in the article. Appellants maintain, however, that it is not necessary in order for them to recover damages that they be mentioned by name, but that it is sufficient if the article points them out in such a way that readers would conclude from a perusal of the article that appellants were the ones against whom the publication was aimed.

Assuming that to be the rule, it is manifest that the published article must contain language libelous to the individual members of the group.

Appellants urge that a reading of the entire article

considered in its natural and obvious sense exposes them to contempt, ridicule, and obloquy, in that the article is tied into and in fact made a part of the story of Lillian A. Ryan.

Applying the rules which we have stated, we are unable to agree that the article in any way exposed the appellants to contempt, ridicule, or obloquy. In so far as the contents of the publication is concerned, there was no charge or intimation that appellants were in any way connected with the fraud perpetrated by Lillian A. Ryan. They were not charged, nor is it reasonable to conclude, that appellants assisted Mrs. Ryan in her operations. It cannot reasonably have been inferred that appellant husband was derelict in his duty to provide for his family. The article is in no way inconsistent with appellants' allegations to the effect that he exerted every effort to care for his wife and children. It is plain from a reading of the publication that it does not charge that appellants violated any law, or received any of the profits which the wife and mother obtained with knowledge that they were acquired illegally.

The contents of the publication complained of in *Hillman v. Star Pub. Co.,* 64 Wash. 691, 117 Pac. 594, 35 L. R. A. (N. S.) 595, are very similar to those in the article published by respondent's newspaper. In that case, the offending article related to the fact that C. D. Hillman had been arrested for attempting " 'one of the biggest swindles in the history of the northwest,' " and stated that he had been convicted on a similar charge several years before. The newspaper also published a picture of Hillman and members of his family, including the daughter who instituted the action. This court upheld the action of the trial court in sustaining a demurrer to her complaint on the ground that it did not state facts sufficient to constitute a cause of action. In

affirming the judgment, Judge Chadwick, speaking for this court, stated:

"Whether the act of the defendant is a libel can be disposed of by reference to our statute. Turning to §§ 2424 and 292, Rem. & Bal. Code, we find that it is a libel 'to expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse;' and that 'In an action for libel or slander, it shall not be necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause arose, but it shall be sufficient to state generally that the same was published or spoken concerning the plaintiff; and if such allegation be controverted, the plaintiff shall be bound to establish on trial that it was so published or spoken.' The complaint alleges that the photograph is a true likeness of plaintiff. We do not find that the mere publication of a photograph, although under circumstances indicating a wilful disregard of private right, is such a publication as is contemplated by the statute. It could have no tendency to expose a party to contempt, ridicule, or obloquy, or operate to deprive her of social enjoyment among right-thinking people. It would rather excite pity for the victim, and invite the contempt of the public toward those who, for the mere sake of sensation and gain, are willing to take that which is not their own to serve an unworthy end. Again, the published photograph being a true likeness and being in and of itself inoffensive, it cannot be held that, because of its publication in connection therewith, the article was 'of or concerning' the plaintiff."

It is true that the article in the *Hillman* case did not contain words, such as complained of in the instant case, relative to the use of ill-gotten gains used to support his family. However, it could be argued with equal force in that case, as it is in this, that Hillman, as a father, made his money by unlawful means, and that his family profited thereby. Nor does it make any difference that only his daughter's picture was pub-

134

lished. Pictures tell a story equal to, and sometimes better than, words.

Among other authorities lending support to our conclusions we note the following: *Witham v. Atlanta Journal,* 124 Ga. 688, 53 S. E. 105, 4 L. R. A. (N. S.) 977; *Wellman v. Sun Printing & Pub. Ass'n,* 66 Hun (N. Y.) 331, 21 N. Y. Supp. 577; *Hargrove v. Oklahoma Press Pub. Co.,* 130 Okla. 76, 265 Pac. 635; *Goldwasser v. Jewish Press Pub. Co.,* 157 App. Div. 908, 142 N. Y. Supp. 188; *Kimmerle v. New York Evening Journal,* 262 N. Y. 99, 186 N. E. 217.

We conclude that the publication complained of was not libelous *per se* and that the judgment of the trial court was correct.

Judgment affirmed.

BLAKE, C. J., MAIN, MILLARD, and ROBINSON, JJ., concur.