[No. 30989. *En Banc.* December 14, 1949.]

WILLIAM J. GAFFNEY, *Appellant,* v. SCOTT PUBLISHING
COMPANY *et al., Respondents.*[1]

*Garvin, Frissell & George,* for appellant.

*Horrigan & Leavy* and *T. D. Peterson,* for respondents.

[1]Reported in 212 P. (2d) 817.

GRADY, J.—This is a civil action for libel brought against Scott Publishing Company, a corporation, and its editor and his wife. A demurrer was interposed to the complaint and sustained. The plaintiff refused to plead further, and judgment was entered dismissing the action. This appeal followed. We shall refer to the defendants collectively as respondent.

The complaint, by two causes of action, alleges in substance that the respondent is engaged in publishing a newspaper called the Tri-City Herald at Pasco, Franklin county, Washington; that the appellant is a licensed attorney at law in the state of Washington, and is also the prosecuting attorney of Franklin county; that on December 26, 1947, and February 25, 1948, the respondent published articles concerning appellant in his capacity and profession as an attorney at law and as the prosecuting attorney of Franklin county; that these articles were false and defamatory, and were published maliciously with knowledge of their falsity, to expose appellant to hatred, contempt, ridicule, or obloquy, or to deprive appellant of the benefit of public confidence or social intercourse, and to injure appellant in his business or occupation; that these articles impute to the appellant, in his character as prosecuting attorney, either (a) incapacity in such position, or (b) fraud, dishonesty, misconduct, or want of integrity to act in his official capacity as prosecuting attorney; and that publication of the articles has been and is greatly injurious and prejudicial to the appellant and his reputation, and has injured him in his profession and business to the extent of seven thousand five hundred dollars as to each of the articles.

The articles complained of are set out in full as exhibits attached to the complaint. The portions relied upon by appellant in his brief as establishing the alleged libel are as follows:

"WHO FUMBLED THE BALL?
[Published on December 26, 1947]

"The staff of this newspaper has interviewed several officials since Monday's Occurrences, and has reached the conclusion that the prosecuting attorney bears most of the

responsibility for the collapse of the case against those arrested . . .

"The prosecutor's job is to protect the public interest by bringing to trial all persons guilty of crimes against the public. His job is not to protect the interests of those persons. Their interests are supposed to be protected by the courts and by their own attorneys.

"In the case of the—the prosecutor, who has previously pledged cooperation in efforts to clean up vice in Pasco, should have let Justice Stone proceed with the trials and should have made constructive efforts to build cases against those persons who, in his judgment, were most liable to be found guilty of serious offenses.

"Even if the end result had been the same—that the 33 arrested persons had gone free—at least the enforcement agencies would not feel, as they do now, that their efforts had been subverted by the man sworn to prosecute the enemies of the public.

"The prosecuting attorney feels strongly that he should have been consulted before the raids were made. He feels that he might have given instructions to the law officers which would have resulted in more and better evidence.

"Under ordinary circumstances, this would be true. However, the sheriff, the chief of police and the police captain have told this newspaper that on numerous occasions, the prosecuting attorney has downgraded charges on serious offenses, has delayed filing commital papers and has gone to great lengths to protect the interests of accused parties, while often failing to conduct a vigorous prosecution in cases which, on their faces, appeared to warrant conviction.

. . .

"Another reason is that such raids must be conducted in absolute secrecy. Last Sunday's raid was in the making for approximately two weeks, yet only the top enforcement executives knew about it. . . .

"Much of this discussion misses the main point—that the prosecutor should be taking the lead in the attack on gambling institutions and bawdy houses, and should not be destroying initiative and confidence of the enforcement agencies by turning their efforts in subjects of ridicule. We can imagine the jubilation among the town's gambling fraternity when news of Monday's fiasco was noised around; instead of having them on the run, they have us on the run, and we feel the prosecuting attorney right now is the bottleneck in the anti-vice campaign, in spite of any argumentation he may employ in mitigation of his actions."

## "Gaffney Hasn't Learned

[Published February 25, 1948]

"It was the sincere hope of this newspaper, following the episode in December when a number of persons arrested for vagrancy were released without official action against them, that the Franklin county prosecuting attorney would make a more vigorous effort to clean up conditions of vice, gambling and health nuisances which existed, and still exist, in the vicinity of Pasco.

"He has not done so.

"In his latest failure to take vigorous steps to clean up these conditions, he has declined to prosecute Frank C. Connell, operator of a trailer camp ordered closed by Dr. Charles Tudor, even though Dr. Tudor has formally called upon him to prosecute.

"William J. Gaffney, the prosecuting attorney, has expressed his opinion to the effect that Connell has not violated the law in permitting about 35 out of an original 60 tenants to keep their trailers in his camp, following Tudor's closure order. Gaffney says Connell has observed the technical requirements of the law by refusing to accept rent money, by refusing to accept new tenants, and by serving eviction notices on them.

"This interpretation of his duties by the prosecuting attorney passes comprehension. Gaffney's job is to prosecute, and let the court decide whether or not the law has been violated. Gaffney is not defense attorney, although in this case, as in the case of the vagrancy charges in December, he has behaved as though he were. . . .

"If Connell's camp is a menace to public health—and Dr. Tudor's investigations would indicate that it is—Gaffney has a clear duty himself to close it down as a public nuisance. He has taken no steps in this direction. . . .

"But Gaffney is permitting a large group of potential law violators, gamblers, procurers, prostitutes, fugitives from justice and others—to gain a clear and unfortunately accurate impression that Pasco is an easy place in which to get along. It was called to our attention today that one of the men caught in the recent vice raids, and released without action, is a man with a long criminal record. Why wasn't he spotted and taken out of circulation for a while on a vagrancy charge?

"What is to be done? It is our opinion that citizens of Pasco would be fully justified in instituting recall proceed-

ings against the prosecuting attorney. And whether or not such a movement is started, the state's attorney general, who has responsibility for seeing that laws are enforced in all counties of the state, has a duty to investigate the performance record of the present prosecuting attorney. We believe it is time something should be done about it. The next regular election is too far away."

The complaint charges libel in a double aspect, in that the publications are directed to appellant both as an individual engaged in the private practice of law and as a public official. We are of the opinion that both publications were written of and concerning the appellant in his official capacity as prosecuting attorney, and their libelous character must be determined only from that standpoint. What we shall say in this opinion is intended to be with reference to appellant in his capacity as a public official.

The complaint does not allege special damages, and to state a cause of action one or both of the publications must be libelous *per se*. *Graham v. Star Pub. Co.*, 133 Wash. 387, 233 Pac. 625; *Magee v. Cohn,* 187 Wash. 157, 59 P. (2d) 1131; *Ryan v. Hearst Publications,* 3 Wn. (2d) 128, 100 P. (2d) 24; *Ziebell v. Lumbermens Printing Co.*, 14 Wn. (2d) 261, 127 P. (2d) 677.

Rem. Rev. Stat. (Sup.), § 2424 [P.P.C. § 117-63], in so far as need be considered, defines libel as follows:

"Every malicious publication . . . which shall tend: —

"(1) To expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse; or . . ."

The statute is a penal one, but a proscribed publication is libelous *per se* as generally recognized in civil actions for damages. *Wilson v. Sun Pub. Co.*, 85 Wash. 503, 148 Pac. 774; *Miles v. Wasmer, Inc.*, 172 Wash. 466, 20 P. (2d) 847; *Ziebell v. Lumbermens Printing Co., supra.*

The law properly gives to the public press encouragement to voice its criticism of the conduct of public officials; but, in the exercise of such privilege, a publication which imputes to them misconduct in office, want of official integrity or fidelity to public trust, if false, is a violation of that

privilege and gives rise to an action for damages. *Byrne v. Funk,* 38 Wash. 506, 80 Pac. 772; *Quinn v. Review Pub. Co.,* 55 Wash. 69, 104 Pac. 181, 133 Am. St. 1016; *McKillip v. Grays Harbor Pub. Co.,* 100 Wash. 657, 171 Pac. 1026; *Miles v. Wasmer, Inc., supra; Ziebell v. Lumbermens Printing Co., supra;* 33 Am. Jur. 161 (Libel and Slander, § 169); Restatement of the Law of Torts, vol. III, § 607, comment c, p. 280.

■■ The determination of whether a writing is libelous *per se* is a matter of law. It is to be considered in its natural and obvious sense and in the sense in which the words used would ordinarily and reasonably be understood by the reader of the publication without regard to the conclusions of the pleader. It must be considered as a whole and not in part or parts detached from the main body of the publication. *Roane v. Columbian Pub. Co.,* 126 Wash. 416, 218 Pac. 213; *Blende v. Hearst Publications,* 200 Wash. 426, 93 P. (2d) 733, 124 A. L. R. 549; *Graham v. Star Pub. Co., supra.*

■ The publications above set forth, when subjected to the foregoing rules and tests, charge the appellant in his capacity as prosecuting attorney of Franklin county with protecting the interests of the criminal element referred to, not in the sense that he was protecting persons from being unjustly charged with the commission of crime, or protecting them in their constitutional and statutory rights when being tried for the commission of a public offense, but in the sense that he was shielding them and not making the proper effort to bring them to justice; that his attitude towards the criminal element in Pasco was of such a friendly character he would not co-operate with the other law enforcement officials; that he made charges against law violators of a lesser grade than that of which they were guilty; and that by delay and inaction he gave aid to them. The impression is given that, when raids were to be made in order to secure evidence of the commission of crime, the prosecuting attorney, because of his friendly attitude towards those who might be affected, could not be taken into the confidence of the other law enforcement officers and be a party to such raids, and that his course of official conduct had given as-

surance to the criminal class that it would find Pasco a safe haven in which to operate.

The demurrer challenges the sufficiency of the complaint, and its effect is to admit all of the allegations of fact well pleaded. The publications are libelous *per se* as defined by both our statute and the common-law definition of libel as recognized by our decisions.

The judgment is reversed, and the cause remanded with directions to enter an order overruling the demurrer.

SIMPSON, C. J., BEALS, ROBINSON, MALLERY, SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.

HAMLEY, J., dissents.