[No. 33779.  *En Banc.*  June 27, 1957.]

BERT SPANGLER, *Respondent*, v. RAY GLOVER et al.,
*Appellants.*

HARRY BALSLEY, *Respondent*, v. RAY GLOVER et al.,
*Appellants.*[1]

[1]Reported in 313 P. (2d) 354.

*Jay G. Sykes,* for appellants.

*H. I. Kyle and Houghton, Cluck, Coughlin & Henry,* for respondents.

ROSELLINI, J.—These libel actions (consolidated for trial) were brought in the superior court for King county, based upon a publication, which it was alleged the defendants prepared, published, and circulated to the public and to members of the International Woodworkers of America in western Washington generally, and to the members of Local 23-157 in particular. The publication reads:

"WHAT IS BEHIND THE ATTEMPTED RECALL OF RAY GLOVER?

"The membership of IWA Local 23-157 is faced with the most important decision they have had to make for many years.

"THIS ISSUE IS, ON THE FACE OF IT, WHETHER RAY GLOVER SHALL BE RECALLED FROM OFFICE. BUT THIS IS NOT THE REAL ISSUE. THE REAL ISSUE IS WHETHER OR NOT THE MEMBERSHIP DESIRES TO RETAIN ITS UNION AS ONE THAT CONSTANTLY AND CONSISTENTLY FIGHTS TO MAINTAIN AND IMPROVE WAGES, HOURS AND WORKING CONDITIONS.

"The record clearly shows that over the years Ray Glover has served this Local Union that the membership has enjoyed as good or better wages, hours and working conditions as the membership of any Local Union in the IWA or in the industry.

"WHAT ELSE DOES THE RECORD SHOW?

"IT SHOWS THAT THE PRINCIPAL AND MOST ACTIVE SPONSORS OF THE MOVEMENT TO RECALL RAY GLOVER HAVE CONSISTENTLY AND CONTINUOUSLY BEEN INVOLVED IN ANTI-IWA AND PRO-EMPLOYER ACTIVITIES FOR THE PURPOSE OF SECURING INDIVIDUAL AND PERSONAL BENEFITS TO THE DETRIMENT OF THE MAJORITY OF THE MEMBERSHIP.

"THE MEMBERSHIP OF THIS LOCAL UNION SHOULD KNOW THAT ONE OF THE LARGER EMPLOYERS FOOTED THE EXPENSE OF PROVIDING BUS TRANSPORTATION TO GET PEOPLE WHOM HE THOUGHT WOULD PARTICIPATE IN THE PROGRAM TO ELIMINATE RAY GLOVER TO A MEETING. ANY THINKING MEMBER KNOWS THAT NO EMPLOYER WOULD DO THIS UNLESS HE COULD SEE SOME PROFIT TO HIMSELF IN DOING SO.

"The membership must also ask themselves who those actively sponsoring the recall movement have in mind for Secretary-Business Agent in the event they are successful in recalling Ray Glover. No name has been mentioned or proposed. No one was a candidate against Ray Glover at the time Local Union Officers were last elected. Ray Glover has pursued no different course since the last election than he pursued for many years previously; namely, fighting at

all times in the best interests and for the welfare of the Union and the membership.

"This type of activity, of course, always costs the boss money. Perhaps the employers have someone in mind for the job who will look after their interests instead of those of the membership.

"WE BELIEVE THAT THE EMPLOYERS ALREADY HAVE PLENTY OF PEOPLE LOOKING AFTER THEIR INTERESTS. WE WANT TO CONTINUE IN OFFICE THOSE WHOSE EVERY THOUGHT OVER A PERIOD OF YEARS HAS BEEN DEVOTED TO PROTECTING AND ADVANCING OUR INTERESTS.

"We repeat that a most vital decision must be made by the membership. Either we will maintain and improve the wages and conditions we now enjoy by retaining a proven fighter for us in office or we face the very certain possibility of losing them by default in support.

"EVERY MEMBER SHOULD PARTICIPATE IN MAKING THIS VITAL DECISION. EVERY MEMBER MUST CAREFULLY WEIGH THE PROVEN RECORD OF PERFORMANCE AGAINST THE SLANDEROUS DISTORTING UNFOUNDED ACCUSATIONS AND DOWNRIGHT LIES BEING USED TO FURTHER THE RECALL EFFORTS. EVERY MEMBER MUST CONSULT HIS OWN CONSCIENCE IN DETERMINING HOW HE SHALL VOTE. NO ONE CAN SIT ON THE SIDELINES IN THIS CASE. THE ISSUES ARE TOO IMPORTANT AND OF TOO LONG RANGE CONSEQUENCES.

"ON THE RECORD RAY GLOVER HAS EARNED AND DESERVES YOUR VOTE OF CONFIDENCE BY YOUR CASTING YOUR BALLOT AGAINST HIS RECALL. VOTE 'NO' AND ASSURE THE CONTINUED PROGRESS OF THE LOCAL UNION AND THE PROTECTION OF THE MEMBERSHIP.

"THIS COMMITTEE HAS ASSISTED AND WORKED FOR THE INTERESTS OF THIS ORGANIZATION SINCE THE DAYS OF OPEN SHOP.

"COMMITTEE FOR PRESERVING AND PROTECTING THE UNION

| Sam Larson | Anthony P. Shay | Joe Gulan |
| Bob Nelsen | Frem H. Terou | Howard Sherman |
| Arthur Borell | Earl DeLano | Robert Blakely |
| William Arko | Carl Malatesta | Bill Rogers" |
| George Parlari | Jack Glover | |

It was alleged that the leaflet, particularly the following paragraphs, referred to the plaintiffs among others and was so understood by the defendants, by the members of the IWA Local 23-157, and by the public generally:

"IT SHOWS THAT THE PRINCIPAL AND MOST ACTIVE SPONSORS OF THE MOVEMENT TO RECALL RAY GLOVER HAVE CONSISTENTLY

AND CONTINUOUSLY BEEN INVOLVED IN ANTI-IWA AND PRO-EMPLOYER ACTIVITIES FOR THE PURPOSE OF SECURING INDIVIDUAL AND PERSONAL BENEFITS TO THE DETRIMENT OF THE MAJORITY OF THE MEMBERSHIP. . . .

"EVERY MEMBER MUST CAREFULLY WEIGH THE PROVEN RECORD OF PERFORMANCE AGAINST THE SLANDEROUS DISTORTING UNFOUNDED ACCUSATIONS AND DOWNRIGHT LIES BEING USED TO FURTHER THE RECALL EFFORTS."

The plaintiffs further alleged that the quoted statements were false and were published and circulated by the defendants with malicious intent to harm the plaintiffs; that the plaintiffs were, as a result of the publication, subjected to shame and disgrace, hatred, contempt, ridicule and obloquy, deprived of public confidence and their good reputation for honesty and integrity; that they had suffered great mental pain, anguish, and disgrace, were shunned by their friends and associates and were shamed and humiliated. They prayed for general damages in the amount of ten thousand dollars each.

Their demurrer having been overruled, the defendants answered, admitting their status as husbands and wives, admitting the publication of the article but denying that it was published maliciously and without just grounds and that it was false. By way of affirmative defense, they alleged that the publication concerned union affairs and was of common interest to the publishers and the recipients, that it was circulated in response to a letter previously circulated by the plaintiffs and others, that it was not activated by hatred, malice, or ill-will, and was therefore privileged.

The case was tried before a jury, which returned verdicts for each of the plaintiffs in the amount of fifteen hundred dollars, having found in answer to special interrogatories that the plaintiffs were among the persons referred to in the publication or among the persons who reasonably would be believed or understood to be the persons referred to in the publication by readers who had some knowledge of the circumstances and conditions existing in the locality where the leaflet was circulated at the time of its publication; that the material complained of was false and not privileged;

and that both plaintiffs were damaged by reason of the publication.

The assignments of error raise three questions: (1) whether the court erred in ruling that the publication in question is libelous *per se*; (2) whether it erred in placing the burden of proving the truth of the publication on the defendants; and (3) whether it erred in entering judgment against the defendant wives.

■ Every publication by writing which tends to expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse or to injure him in his business or occupation, is libelous *per se*. *Arnold v. National Union of Marine Cooks & Stewards Ass'n*, 36 Wn. (2d) 557, 219 P. (2d) 121. *Dick v. Northern Pac. R. Co.*, 86 Wash. 211, 150 Pac. 8, Ann. Cas. 1917A, 638; *Wilson v. Sun Publishing Co.*, 85 Wash. 503, 148 Pac. 774.

■ Defamatory words spoken of a person, which in themselves prejudice him in his profession, trade, vocation, or office, are slanderous and actionable *per se* unless they are either true or privileged. *Owen v. Scott Publishing Co.*, 46 Wn. (2d) 666, 284 P. (2d) 296; *Yelle v. Cowles Publishing Co.*, 46 Wn. (2d) 105, 278 P. (2d) 671; *Miles v. Louis Wasmer, Inc.*, 172 Wash. 466, 20 P. (2d) 847.

In *Arnold v. National Union of Marine Cooks & Stewards Ass'n, supra*, we held that a letter sent by a union agent to various branches of the union, labeling the persons named on a list attached thereto "renegades" and stating that they had deserted the union during a strike and attempted to organize a dual organization for the purpose of breaking the strike and destroying the union, was libelous *per se*. In *Dick v. Northern Pac. R. Co., supra*, we held libelous *per se* a letter published by an employer, stating that the plaintiff employee had intimidated other employees.

It is argued that the publication does no more than accuse the plaintiffs of entertaining a viewpoint which is unpopular among its intended readers. If this were the extent of the accusation, we would be inclined to hold that the pub-

lication falls short of libel *per se*. However, it goes much further and proclaims that:

"IT [the record] SHOWS THAT THE PRINCIPAL AND MOST ACTIVE SPONSORS OF THE MOVEMENT TO RECALL RAY GLOVER HAVE CONSISTENTLY AND CONTINUOUSLY BEEN INVOLVED IN ANTI-IWA, ANTI-UNION AND PRO-EMPLOYER ACTIVITIES FOR THE PURPOSE OF SECURING INDIVIDUAL AND PERSONAL BENEFITS TO THE DETRIMENT OF THE MAJORITY OF THE MEMBERSHIP."

The paragraphs of the leaflet which follow enlarge upon this theme:

"THE MEMBERSHIP OF THIS LOCAL UNION SHOULD KNOW THAT ONE OF THE LARGER EMPLOYERS FOOTED THE EXPENSE OF PROVIDING BUS TRANSPORTATION TO GET PEOPLE WHOM HE THOUGHT WOULD PARTICIPATE IN THE PROGRAM TO ELIMINATE RAY GLOVER TO A MEETING. ANY THINKING MEMBER KNOWS THAT NO EMPLOYER WOULD DO THIS UNLESS HE COULD SEE SOME PROFIT TO HIMSELF IN DOING SO.

"The membership must also ask themselves who those actively sponsoring the recall movement have in mind for Secretary-Business Agent in the event they are successful in recalling Ray Glover. No name has been mentioned or proposed. No one was a candidate against Ray Glover at the time Local Union Officers were last elected. Ray Glover has pursued no different course since the last election than he pursued for many years previously; namely, fighting at all times in the best interests and for the welfare of the union and the membership.

"This type of activity, of course, always costs the boss money. Perhaps the employers have someone in mind for the job who will look after their interests instead of those of the membership."

■ Surely, such accusations, published in a community composed largely of union members and their families, tended to deprive the persons referred to of the benefit of public confidence and to injure them in their business and social relationships with their fellow union members and in the pursuit of their occupation. The purport of such an accusation is that the union member is willing to accept special benefits from the employer and in return to work actively against the interests of his fellow members. The pamphlet even suggests that if one of these opponents of Ray Glover should attain the office of Secretary-Business

Agent, he would serve the interests of the employer rather than those of the union. A union member who is disloyal, and who is willing to work for the interests of the employer rather than those of the union in order to secure benefits for himself, to the detriment of a majority of the members, is held in disdain and contempt by his fellow union members. This portion of the leaflet is sufficient to support an action for libel. It is not necessary, therefore, to determine whether the respondents are correct in their contention that the paragraph pertaining to slanderous accusations and lies, is also libelous.

The defendants urge that a publication cannot be libelous *per se* if it does not reveal on its face the identity of the person or persons libeled. They cite cases from other jurisdictions so holding. There is a split of authority on this question, and this court has chosen to follow those which hold that it is not necessary that the person defamed be named in the publication if, by intrinsic reference, the allusion is apparent or if the publication contains matters of description or reference to facts and circumstances from which others may understand that the complainant is the person referred to, or if he is pointed out so that the persons knowing him could and did understand that he was the one referred to in the publication. *Olympia Water Works v. Mottman*, 88 Wash. 694, 153 Pac. 1074; *Hollenbeck v. Post-Intelligencer Co.*, 162 Wash. 14, 297 Pac. 793.

We are aware of the case of *Ryan v. Hearst Publications*, 3 Wn. (2d) 128, 100 P. (2d) 24, which at first glance might appear to support a contrary rule; however, in that case it was found that the allegedly libelous article not only did not refer to the plaintiffs by name, but contained no libelous statements concerning them. We think the rule adopted by this court is the proper one, for in determining whether a publication is libelous *per se*, the court is usually concerned with the nature of the defamatory words used, not with the identity of the person about whom they are uttered, though his identity may be significant in determining whether the circumstances are such that words which would otherwise be harmless are libelous. Here, the

words used were defamatory regardless of the identity of the union members to whom they referred. The court instructed the jury that the burden was upon the plaintiffs to prove that they were the persons, or among the persons, referred to in the libelous publication. There was ample evidence to support the jury's affirmative finding in this regard. We find no error in the court's ruling that the published matter in question was libelous *per se*.

Nor is there merit to the defendants' contention that the burden of proving the truth of the publication was improperly placed upon them. Once it is determined that a publication is libelous *per se*, the burden rests upon the publisher to prove its truth. *Ecuyer v. New York Life Ins. Co.*, 101 Wash. 247, 172 Pac. 359. The defendants do not question their burden of proving the statements contained in the first of the defamatory paragraphs, but argue that it would be difficult if not impossible to prove the truth of the statements contained in the second paragraph, to the effect that slanderous accusations and lies had been circulated about the defendant Ray Glover.

There was no evidence that the statements in the first paragraph were true; in fact, one of the defendants testified that they were made only for propaganda purposes. As we have said, this paragraph was libelous *per se*, and if the jury found it to be false, as it was bound to do under the evidence, that is sufficient to sustain the verdict.

The defendants make some argument that the publication was privileged. Their theory of privilege was not embodied in any proposed instruction, and no exception was taken to the instruction given. An issue which was the subject of an instruction to which no exception was taken will not be considered on appeal. *Ward v. Painters' Local Union No. 300*, 41 Wn. (2d) 859, 252 P. (2d) 253.

The defendants urge that the court erred in entering judgment against the defendant wives in their separate capacity and in denying their motion to amend their answer to conform to the proof, which was made after the verdict was returned. The plaintiffs, in their complaint, alleged the marital status of the defendants and then alleged that

the "defendants" had prepared, published, and circulated the allegedly libelous leaflet. The leaflet was signed by the male defendants only. In their answer, the defendants admitted that the leaflet was published. However, they did not expressly admit that they published it. In a subsequent paragraph, they alleged that "the defendants" were members of the lumbermen's local union. Evidently, in preparing their answer, the defendants assumed that the wives were mentioned in the complaint only for the purpose of holding the communities liable, and that the plaintiff was not seriously charging that the wives participated in the union activities.

It is true that facts well pleaded if not denied in the answer, are deemed admitted. But language used in a pleading must be construed in the sense in which it was used. It should be construed as a whole to determine the intention of the pleader. *Jorgensen v. Dahlstrom*, 53 Cal. App. (2d) 322, 127 P. (2d) 551. Furthermore, an admission may be waived, and there may be such a waiver where the entire case is thereafter tried as if admitted facts were in issue. *Turner v. McCready*, 190 Ore. 28, 222 P. (2d) 1010.

During the course of the trial, the plaintiffs' attorney asked for a stipulation that the defendant Ray Glover, whose name did not appear on the petition, had participated in its publication and circulation. The attorney for the defendants consented to the stipulation, and the plaintiffs' attorney stated that that was all they wanted. This fact and the ambiguity of the complaint indicate that the plaintiffs did not consider the answer an admission that all of the named defendants had actively participated in the publication of the libel. Nor is there anything in the record to indicate that they did participate. We conclude that both the plaintiffs and the defendants, in referring to the defendants who actively participated in the publication, used the term in reference to the union members only. It was error therefore to hold the wives separately liable.

In so far as the judgments were entered against the wives separately, they are reversed; in all other respects, they are affirmed.

MALLERY, SCHWELLENBACH, DONWORTH, and OTT, JJ., concur.

WEAVER, J. (dissenting)—The majority opinion holds that the designation of plaintiffs as "anti-IWA and pro-employer" is libelous *per se*, and that it is not necessary to allege and prove *special* damages to sustain a judgment against defendants. I cannot agree.

The repute and status of organizations, such as the International Woodworkers of America, and those who may be designated as employers, is well established and long accepted in the economic life of this country. To my mind, no opprobrium attaches to an individual who is designated as either anti or pro-IWA, anti or pro-employer; certainly, such designation is not opprobrious nor libelous *per se*. If special damages are alleged and proved, a different question is presented; but the words cannot be expanded by insinuation or innuendo.

In view of the conclusion reached in the majority opinion, the second paragraph of the publication, which the trial court found to be libelous *per se*, is not considered. The paragraph reads:

"Every member must carefully weigh the proven record of performance against the slanderous distorting unfounded accusations and downright lies being used to further the recall efforts."

Plaintiffs were not public officers, union officers at the time of publication, nor candidates for public or union office. The quoted paragraph does not charge plaintiffs with the commission of a crime, moral turpitude, breach of duty, nor want of integrity. In fact, the paragraph is not directed against *individuals* but against previous accusations. Expressions of opinion or severe criticism, such as involved here, are not libelous *per se* if they clearly go only to the merits or demerits of a cause or controversy.

The justness of the recall action was questioned without any words casting doubt upon plaintiffs' character or the integrity of their actions, apart from their active support of the recall. The quoted paragraph does not charge anything that would affect plaintiffs in their private lives, stamp them as dishonest, or bring upon them hatred, contempt, ridicule, or obloquy.

In my opinion, to hold that the article is libelous *per se* would mean that a *denial* of a charge would itself be libelous *per se*; for in denying the charge, the one making the denial would be, in effect, calling his accuser a liar. As appellants point out in their brief, this "would render a great amount of current political oratory libelous *per se*—a result neither necessitated by precedent nor reason."

For these reasons, I would reverse the judgment.

Hill, C. J., and Foster, J., concur with Weaver, J.

Finley, J., did not participate.

August 26, 1957. Petition for rehearing denied.