[No. 39119.    En Banc.    September 18, 1969.]

DOUGLAS G. AMSBURY *et al., Appellants,* v. THE COWLES
PUBLISHING COMPANY, *Respondent.**

Reported in 458 P.2d 882.

*Cashatt, Williams, Connelly & Rekofke* and *Jerome Williams,* for appellants.

*Witherspoon, Kelley, Davenport & Toole, William V. Kelley, E. Glenn Harmon,* and *Paul P. Ashley,* for respondent.

NEILL, J.—Plaintiffs appeal from a judgment entered on a verdict for defendant in a libel action. The alleged defamation arises from the same newspaper article involved in *Tilton v. Cowles Publishing Co.,* 76 Wn.2d 706, 459 P.2d 8 (1969). The details concerning preparation, content and publication of the article are contained in our opinion in *Tilton* and will not be repeated here.

Plaintiffs are firemen employed by the Fire Department of the City of Spokane. They were named as defendants in the Parsons-Natwick suit and named in the news article both as defendants and as members of the Spokane Area Public Safety Council Executive Committee. None of the plaintiffs were members of the committee at the time the article was published.

At the close of all the evidence, plaintiffs moved for a directed verdict on the issue of liability. When this motion was denied, plaintiffs made a second motion to withdraw the issue of privilege from the jury. This was also denied.

The trial judge, over plaintiffs' exceptions, instructed the jury that the newspaper article was subject to a qualified privilege which could be overcome only by a showing that defendant was actuated by actual malice in publishing the article. The jury returned a verdict for defendant.

Five of the six plaintiffs appeal from the judgment entered on the verdict, assigning as error the denial of their

motions for directed verdict and to withdraw the issue of privilege from the jury. Plaintiffs have not assigned error to any of the instructions given, nor have they set forth any of these instructions in their brief.

As an initial matter, defendant has made a motion to dismiss this appeal upon the ground that plaintiffs have failed to comply with Rule on Appeal 43, RCW vol. 0. Defendant contends that plaintiffs, by assigning error to the trial court's failure to withdraw the issue of privilege from the jury, are, in effect, challenging the instructions on privilege without setting them forth in their brief. In support of this contention, defendant cites *Wold v. Jones,* 60 Wn.2d 327, 329, 373 P.2d 805 (1962), where the following assignments of error were made:

"The trial court erred:

"1. In failing to remove from the Jury's consideration Respondent's claim of loss of income.

"2. In failing to remove from the Jury's consideration Respondent's claim of loss of use of automobile.

"3. In failing to remove from the Jury's consideration Respondent's claim as to future medical treatment and expense. . . ."

We held that the above assignments related to the giving or failure to give, of certain instructions which were not set out in the brief as required by ROA 43 and thus could not be considered. However, in *Wold* appellant did not make a motion to withdraw these issues from the jury.

The motions made by plaintiffs are a proper way to seek the withdrawal of an issue from the jury. *Blomskog, Erickson & Cotton v. Seattle,* 107 Wash. 471, 474, 182 P. 571 (1919).

Defendant also cites *Rank v. Alaska S.S. Co.,* 45 Wn.2d 337, 338, 274 P.2d 583 (1954), in support of the motion to dismiss. The assignment of error was

"The lower court erred in withdrawing appellant's affirmative defense of contributory negligence from the jury and refusing to give appellant's proposed instructions Nos. 4 and 5."

We refused to consider the assignment because appellant

had failed to set out the instructions given. Again, that case did not involve a motion to withdraw the defense.

■ The purpose of ROA 43 was examined in *Lakoduk v. Cruger*, 48 Wn.2d 642, 666, 296 P.2d 690 (1956):

> This rule relates to cases where the giving of instructions, or the refusal to give requested instructions, has been assigned as error in appellants' brief. The rule does not relate to cases when the only assignment of error is that the trial court erred in granting a motion for new trial. The assignments in this case require us to review the legal sufficiency of the reasons stated in the trial court's order for granting respondents' motions for new trials.

When tested by the purposes of ROA 43, a motion for new trial is not much different from a motion for a directed verdict or to withdraw an issue from the jury. All three motions may be decided without bringing the instructions into issue. We therefore hold that plaintiffs can properly assign error to the denial of these two motions without assigning error to or setting forth any of the trial court's instructions in their brief.

The motions, denial of which plaintiffs have assigned as error, are as follows:

> [T]he plaintiff moves for a directed verdict in favor of the plaintiff, subject only to determination by the jury of the damages, if any, sustained by the plaintiffs upon the grounds that the article in question is, as a matter of law, libelous per se, even though, first of all, there is no privilege, and secondly, if there is a privilege, it is a qualified privilege, which disappears upon an abuse of privilege—that is, upon a showing of what in law amounts to malice, . . . and that therefore, as a matter of law, he [the reporter] knew that any imputation of crime was false . . . and for that reason, as a matter of law, there is malice in the eyes of the law which wipes away any privilege that could exist. So, as a matter of law, the article being libelous per se, and the privilege having been abused, if there was a privilege, plaintiffs are entitled to a directed verdict.

That motion was denied, whereupon plaintiffs' counsel stated:

That motion having been denied, I'd like to move the Court that the issue of privilege, if there ever existed privilege in the case, should be withdrawn from the jury and the case submitted purely on the question of jury determination of whether the article was libelous per se, upon the same ground that the privilege, as a matter of law, was abused because of Mr. Roberts testimony that he knew that no crime or criminal conduct was being suggested when he wrote this article, and therefore, he wrote the article, the defamatory article, the article that imputes a crime. Necessarily, that imputation of crime was false and knowingly false as to Mr. Roberts, and the newspaper being—and of course, Mr. Roberts is the newspaper.

Even assuming there was no privilege applicable to this publication or that any privilege was negated by proof of actual malice, before the motion for directed verdict could be granted the news article in question would have to be found libelous per se as a matter of law.

■ There are two meanings of the words "per se" when used in defamation actions. These words may signify either (1) that the article is libelous on its face or (2) that it is actionable without proof of special damage. *See* Prosser, Torts § 107 (3d ed. 1964) at 782. Failure to differentiate between these two meanings has resulted in some confusion in analyzing defamation decisions.

As the term "per se" has been used in our recent decisions it refers to that type of libel which, if proved, will result in recovery without proof of special damages. Whether the publication is libelous as a matter of law, or whether the very existence of a libel is a matter to be submitted to the jury, is a separate question.

■■ A written publication is libelous per se, (actionable without proof of special damages) if it tends to expose a living person to hatred, contempt, ridicule, or obloquy, or to deprive him of the benefit of public confidence or social intercourse. *Owens v. Scott Publishing Co.* 46 Wn.2d 666, 284 P.2d 296 (1955); *Spangler v. Glover*, 50 Wn.2d 473, 313 P.2d 354 (1957); *cf.*, RCW 9.58.010. It is clear that the

imputation of a criminal offense involving moral turpitude is libel per se in this sense. *Ward v. Painters' Local 300*, 41 Wn.2d 859, 252 P.2d 253 (1953). In determining whether a publication can be defamatory, it must be construed in the sense in which it would ordinarily be understood by its readers. *Purvis v. Bremer's, Inc.*, 54 Wn.2d 743, 751, 344 P.2d 705 (1959).

3 Restatement, Torts § 614 outlines the division of functions between judge and jury in defamation actions as follows:

(1) The court determines whether a communication is capable of a defamatory meaning.

(2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient.

Although the above section of the Restatement has been quoted with approval by us on at least two occasions (*Purvis v. Bremer's, Inc., supra; Swartz v. World Publishing Co.*, 57 Wn.2d 213, 215, 356 P.2d 97 (1960)), our earlier cases do contain statements that would indicate that whether a writing is libelous per se is to be determined as a matter of law. *E.g., Gaffney v. Scott Publishing Co.*, 35 Wn.2d 272, 212 P.2d 817 (1949); *Ryan v. Hearst Publications, Inc.*, 3 Wn.2d 128, 100 P.2d 24 (1940). These statements, however, must not be misread by confusing the two meanings of the words, "per se." *Gaffney* and *Ryan*, both involved appeals from successful demurrers. The effect of both decisions is to state only that the original question of whether the complaint contains allegations capable of constituting libel per se must be decided by the court as a matter of law. Both decisions are thus consistent with the Restatement position.

■ In addition to the above rule specifically related to defamation actions, we should not lose sight of the general principle that when ruling on a motion for a directed verdict a court must view the evidence and all reasonable inferences therefrom in a light most favorable to the nonmoving party. *E.g., Hansen v. Pauley*, 67 Wn.2d 345, 407

P.2d 811 (1965); *Hopper v. Gallant,* 46 Wn.2d 552, 282 P.2d 1049 (1955).

Plaintiffs argue that this news article imputes a crime to them and, as such, is libelous per se. We agree that the article could be read as reporting a criminal charge. *See Tilton v. Cowles Publishing Co., supra.* This, however, is only a determination that the article in question is capable of a defamatory meaning (*see* Restatement, Torts, *supra*), and that the defamation, if proven, would be libel per se. The remaining question is whether the judge or jury should have decided if the alleged libel per se was proven. As we noted in *Tilton,* the article in question when read as a whole makes it fairly clear to a person with legal training that the action involved a civil rather than a criminal complaint. This at least raises an inference that the article might be so read by ordinary readers. Under these circumstances we hold that it would have been improper to withdraw from the jury the issue of whether the article imputes a crime.

But a publication may also be libelous per se if it exposes a person to obloquy or deprives him of the benefit of public confidence or social intercourse. The article certainly could be read as casting some element of blame upon plaintiffs for certain wrongdoings and is clearly capable of depriving plaintiffs of public confidence or social intercourse. However, the article does, as defendant points out, appear to attach the primary stigma upon the members of the police local, rather than upon plaintiffs. We would hesitate under these circumstances, when dealing with such ill-defined quantities as "public confidence" and "social intercourse" to require the trial court to withdraw this question from the jury. As we stated in *Purvis v. Bremer's Inc., supra,* at 752:

> Where the definition of what is libelous *per se* goes far beyond the specifics of a charge of crime, or of unchastity in a woman, into the more nebulous area of what exposes a person to hatred, contempt, ridicule or obloquy, or deprives him of public confidence or social intercourse, the matter of what constitutes libel *per se* becomes, in many instances, a question of fact for the jury.

We therefore follow the Restatement position and hold that although the trial court makes the original determination as a matter of law whether an article is capable of being libelous per se, in all but extreme cases the jury should determine the question of whether it was actually libelous per se. Since the trial court could not have properly found the article libelous per se as a matter of law, the denial of the motion for a directed verdict on liability was not error.

■ Plaintiffs gave the trial court only one ground for granting their motion to withdraw the issue of privilege from the jury—that was that the privilege was abused. Plaintiffs argued that Mr. Roberts, the reporter who wrote the article in question, knew that he was writing about a civil suit, but wrote an article reporting a criminal action. Therefore, plaintiffs contend defendant published an article knowing it was false, which constitutes actual malice and defeats any claim of qualified privilege. We considered an identical argument in *Tilton v. Cowles Publishing Co.,* *supra,* and there held that the facts related by plaintiffs were not sufficient to bring the issue of malice to the jury, absent a showing that the reporter was aware or should have been aware of a high probability that the public would read his article as reporting a criminal charge. It would have been improper to withdraw the issue of privilege from the jury upon the ground that it was abused as a matter of law.

■ In *Tilton,* we held that, as a matter of law, the newspaper article was qualifiedly privileged as to the plaintiffs therein under the rule of *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964), as extended in *Associated Press v. Walker,* 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967), and *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967). Here, however, plaintiffs did not inject themselves into the vortex of a public issue. We do not reach the issue of whether the New York Times rule of actual malice may be applied to ordinary city firemen as to

conduct outside the scope of their official, public duties and who have not voluntarily injected themselves into a current public controversy. Such argument was not made to the trial court in support of the motion to withdraw the defense of privilege. The trial court must be afforded an opportunity to rule correctly upon a matter before it can be presented to us on appeal. *Lake Air, Inc. v. Duffy*, 42 Wn.2d 478, 482, 256 P.2d 301 (1953). The fact that plaintiffs later, when objecting to the court's instructions, argued that the article was not subject to the privilege is of no relevance when they did not assign error to any of the instructions.

Finding no error in the denial of the challenged rulings on the motions, the judgment is affirmed.

ALL CONCUR.

---

November 26, 1969. Petition for rehearing denied.